[No. 17295. Department One. January 20, 1923.]

## T. L. HOMAN et al., Appellants, v. FIR PRODUCTS COMPANY et al., Respondents.[1]

CORPORATIONS (172, 206)—CONVEYANCES—INSOLVENCY—POWER TO DISPOSE OF CORPORATE ASSETS—BONA FIDE PURCHASERS. A sale by an insolvent corporation of all its assets to its principal creditor was for full value and fair consideration, where the creditor paid $116,-000 for property worth $127,000, and cancelled a debt of $132,000, while the proceeds of the sale distributed to other creditors resulted in dividends of 36 per cent.

SAME (172, 206). Such sale is not void because other creditors held out wrongful inducements to certain of the trustees, where the purchaser was not a party thereto.

SAME (172)—PROPERTY—POWER TO DISPOSE OF ALL ASSETS. The trustees of an insolvent corporation may sell and dispose of all its assets and property, although it puts the company out of business.

SAME (27, 82)—BY-LAWS—MEETINGS—CALLING AND NOTICE—POWERS. Where the by-laws of a corporation do not specify the notice for a special meeting of the trustees, or restrict the business to be conducted thereat, a special meeting called informally, attended by all the trustees, is valid and may transact any business within the power of the trustees at a regular meeting.

SAME (216, 217) — INSOLVENCY — APPOINTMENT OF RECEIVER— GROUNDS. A receiver for an insolvent corporation should be appointed, although it is claimed, and it may be, that it has no assets because of a sale of all its property at a fair value, where it appears that some of the trustees may have wrongfully profited in such sale, and may be liable to account to the creditors, who also claim that the proceeds of the sale were not equitably distributed to the creditors.

Appeal from a judgment of the superior court for Grays Harbor county, Reynolds, J., entered October 26, 1921, dismissing an action for equitable relief, tried to the court. Affirmed in part and reversed in part.

*C. A. Sheppard* and *F. L. Morgan,* for appellants.

*W. H. Abel* and *B. G. Cheney,* for respondents.

[1]Reported in 212 Pac. 240.

PARKER, J.—This action was commenced on May 19, 1921, in the superior court for Grays Harbor county, by the plaintiffs, T. L. Homan, owner of shares of the capital stock of the defendant Fir Products Company, and E. B. Arthaud, as administrator of the estate of John A. Acteson, deceased, owner of shares of the capital stock of that company, against the defendants Fir Products Company, F. L. Hartung, George E. Hubble, George R. Eberting and A. A. Schafer, sometimes mentioned in this record as Albert Schafer, trustees of that company, and Peter Schafer, Hubert Schafer and Schafer Brothers Logging Company. On June 10, 1921, Charles W. Stine, owner of shares of stock in the Fir Products Company, intervened and joined the plaintiffs in the action. On the same day Charles W. Stine, Hoquiam Water Company, and James C. Davis, United States Railroad Administrator, creditors of the defendant Fir Products Company, intervened and joined the plaintiffs in the action.

The purpose of the action and the relief sought by the several plaintiffs and interveners is in substance the same, to wit, that a sale of the property and assets of the Fir Products Company, made by its trustees on April 14, 1921, to the defendants Peter and Hubert Schafer, be set aside as having been made in fraud of the rights of the plaintiffs and interveners as stockholders and creditors of the Fir Products Company; and that a receiver be appointed to take charge of the business and property of the Fir Products Company, whether or not such sale be set aside, to the end that its property and assets may be equitably applied to the payment of its debts, and the remainder thereof, if any, preserved to its stockholders; the plaintiffs and interveners proceeding upon the theory not only that the

sale to Peter and Hubert Schafer of the property and
assets of the Fir Products Company was void and in
fraud of their rights, but also that the distribution of
the proceeds of that sale was not equitably made, and
also that there are other property and choses in action
belonging to the Fir Products Company which have in
effect been abandoned by its trustees, all in fraud of
the rights of its creditors and stockholders.  A trial
upon the merits resulted in a final judgment of dis-
missal, denying to the plaintiffs and interveners any
relief, from which disposition of the cause they have
jointly appealed to this court.

The trial court made no findings, considering it un-
necessary in view of the fact that the cause is one of
equitable cognizance.  The record is voluminous and
the problems presented to the court somewhat involved.
We think the controlling facts may be summarized as
follows:  The Fir Products Company was duly incor-
porated in November, 1919.  It then took over all of
the business and assets of the Hoquiam Sash & Door
Company, assuming all of the liabilities of that com-
pany.  Appellant Stine in his complaint makes some
claim of irregularity in that transaction prejudicial to
his rights as a stockholder and creditor of that com-
pany.  However, he became a stockholder in the Fir
Products Company, receiving stock therein in lieu of
his stock in the Hoquiam Sash & Door Company, and
his rights as a creditor in that company have been
fully preserved as a creditor of the Fir Products Com-
pany.  It is not here seriously argued that his rights
either as a stockholder or a creditor are now affected
by that transaction; so we proceed to notice his rights
only as a stockholder and creditor of the Fir Products
Company as being in substance the same as the
rights of the other appellants as stockholders and

creditors of the Fir Products Company, which company we shall hereafter refer to as the company. The original trustees of the company, named in its articles of incorporation, were F. L. Hartung, George E. Hubble, T. L. Homan, J. A. Acteson and Albert Schafer. The trustees of the company have at all times remained the same, except that at the election held on June 28, 1920, George R. Eberting became trustee in place of T. L. Homan; Hartung, Hubble and Schafer being at all times its president, vice-president and secretary, respectively.

On April 13, 1921, and for some time prior thereto, as we think the evidence clearly shows, the company was and had been seriously embarrassed as to its financial condition to the extent that it was then hopelessly insolvent. It had for some months been operating at a loss of several thousand dollars per month. It had electrical machinery which was held by it on conditional sale contracts on which it was in default in the payment of the purchase price, which machinery was about to be taken from it because of such default; actions being then commenced and threatened in that behalf, to which it had no defense. This machinery was of such quantity and character, forming an integral part of the company's main sawmill plant, that the removal of it would render the plant of no value as a working plant, and the company was then wholly unable financially to pay the balance due upon such machinery or to replace it with other machinery to serve the same purpose. The company then owed upwards of $250,000 on secured and unsecured indebtedness. Of this unsecured indebtedness, some $132,000 was owing for logs to Schafer Brothers Logging Company, a corporation, which company, for present purposes, we may regard as being owned and controlled by Peter Schafer,

Hubert Shafer and Albert Schafer. At that time, as we think the evidence clearly shows, the total value of all the property of the company was far less than the total amount of its then indebtedness.

For some time prior to that time, some of the larger creditors of the company had been putting forth efforts to induce Schafer brothers to purchase and take over the business and property of the company, it being the view of those most concerned, as claimed by them, that Schafer brothers were financially able to do so and that such a course would result in minimizing the loss to its creditors; rather than let the affairs of the company pass into a receivership and be settled by court proceedings. On that day a meeting was held at which some of the principal creditors were present, together with Schafer brothers and some of the trustees of the company; which meeting resulted in an informal agreement being signed by W. H. France on behalf of the creditors of the company, and Peter Schafer on behalf of Schafer brothers, by which the latter agreed to make an offer of purchase to the trustees of the company. On the next day, April 14, 1921, the president of the company requested all of the trustees to be present at a trustees' meeting to be held at the office of the company during the evening of that day. A trustees' meeting was accordingly held that evening at the office of the company, all of the trustees being present, including Acteson, who has died since then, and whose administrator is a plaintiff in this action. At that meeting Schafer brothers made their offer to purchase, as agreed to at the informal meeting the previous evening, which offer was accepted by the trustees, all as evidenced by the minutes of that meeting which we here quote in full, including the signatures of the trustees thereto and the endorsement of accept-

ance thereon in behalf of Peter and Hubert Schafer, as follows:

"At a meeting of the trustees of Fir Products Company held this 14th day of April, 1921, at its office in Montesano, the following directors were present: F. L. Hartung, Geo. E. Hubble, J. A. Acteson, G. R. Eberting and Albert Schafer, said Albert Schafer being excused from further attendance, the said directors owning a majority of all the stock entitled to vote at a stockholders meeting. Whereupon the following proceedings were had:

"Whereas, Peter Schafer and Hubert Schafer have offered to purchase the entire mill plant of the company located at and near Montesano, Washington, and the sash and door plant located at Hoquiam, Washington, including therein all land, improvements thereon, fixtures, furniture, lumber, and all real and personal property of every kind, including all unassigned accounts receivable and choses in action; not including, however, the books of entry and account nor accounts heretofore assigned; which books, however, are to be open at all times for their use and inspection, with authority to take copies.

"In consideration whereof, they offer to pay as follows:

"To transfer by endorsement log paper issued by A. J. West Lumber Company, falling due within the next ninety days in the amount of $44,650.00; to execute their note to the company in the sum of $5,000.00, payable on or before six months from this date, with interest at the rate of 7% per annum; to execute a note in the sum of $20,000.00, payable on or before five years from this date, with interest at the rate of 6% per annum, payable semi-annually, secured by a mortgage on the same property that is now covered by mortgage heretofore made by Hoquiam Sash & Door Co. to W. H. France, Trustee, making a total consideration to be paid direct to the company of $69,650.00. And they further agree to assume and pay the present outstand-

ing pay roll of the company, amounting to approximately $8,000.00, and any other immediate expenses attached to the above plants, and to assume and perform all obligations under the contract to furnish power, between the company and the Northwest Electric & Water Works, and to assume and pay any and all conditional sale contracts upon machinery and electrical machinery.

"And whereas the four named directors consider that a fair valuable consideration is offered for said property; and that it is for the best interests of the company, its directors and stockholders, to accept the said offer,

"Now, therefore, be it resolved, that said offer be and the same is hereby accepted, and the President and Secretary of the company are authorized and directed to cause to be prepared and to execute the necessary instruments conveying title to Peter Schafer and Hubert Schafer, or to their order, to all the above mentioned property, and to deliver the same upon receiving said consideration; and that as and when said consideration is converted into cash, then that they be and are hereby authorized and directed to pay the creditors of the company pro rata after the payment of all secured and preferred claims, including Montesano State Bank $5,000 and interest paid by it and Grays Harbor Co. $800.00, and to that end the President and Secretary are hereby authorized to select a trustee to disburse said funds.

"Pending the preparation of transfer papers the President is hereby authorized to let Peter Schafer and Hubert Schafer have joint equal possession to each and said mill plants, and that all operations thereof to be at their expense. Provided, however, that if the title to said real estate is in fact not marketable, then that they shall surrender the joint equal possession before referred to unto the company on or before April 20, 1921.

"Any advances that the said Peter Schafer and Hubert Schafer shall make in taking care of the pay roll now existing, or that may be incurred pending the closing of this deal, shall be recognized as a pre-

ferred labor claim if the deal is not finally consummated.

"[Signed]    F. L. Hartung.
"[Signed]    George E. Hubble.
"[Signed]    J. A. Acteson.
"[Signed]    Geo. R. Eberting.

"Accepted by Peter Schafer and Hubert Schafer April 14, 1921.

"By [Signed] A. A. Schafer."

Schafer brothers made payment accordingly and took possession of the property so purchased by them and have assumed control and ownership over it ever since. We do not find in the record any formal selection of a trustee by the company's president and secretary to distribute the funds to the creditors as contemplated by the above quoted minutes of the meeting of April 14, 1921. However, P. E. Farr, an employee of the company, acted as such trustee, receiving and disbursing the funds. The record we think warrants the conclusion that he assumed such position as trustee with the approval of the president and secretary. Such disbursement by Farr resulted in the unsecured creditors, other than Schafer Brothers Logging Company receiving dividends upon their several claims to the extent of approximately thirty-six per cent thereof. Schafer Brothers Logging Company received nothing upon its unsecured claim of approximately $132,000 for logs furnished the company, unless it be in the excess value of the property received by Schafer brothers over and above the amount they paid and assumed as the purchase price of the property they received from the company. In addition to the $69,650 which was in effect paid to the company directly by them, they assumed and paid the then past due pay roll of the company approximating $8,000, and were also obliged to pay upon the machinery conditional sale contracts

approximately $39,000 to prevent the removal of the machinery from the plant. In other words, they in effect paid for all of the property they received approximately $116,000, not considering the claim of approximately $132,000 owing their logging company, upon which claim it received no dividend, as the other unsecured creditors did upon their several claims, it evidently being understood that its claim should be canceled as a part of the sale transaction. The fair value of all the property received by Schafer brothers from the company as the result of the purchase made by them we think in no event exceeded $127,000. The testimony of several experienced lumber and mill witnesses who examined the plants of the company and were acquainted with their condition and values on April 14, 1921, clearly leads to this conclusion.

As opposed to the opinion testimony of these witnesses we have little else than the book or paper value, with practically no sworn testimony supporting the claim of a greater value. We deem it unnecessary to further review the evidence touching the question of value of the property received by Schafer brothers and Schafer Brothers Logging Company as the result of the sale. We have then, as we conclude, Schafer brothers receiving at the most $127,000 worth of property, paying therefor approximately $116,000, and the cancellation of their logging company's claim of approximately $132,000 for logs furnished to the company. So whatever may be said as to their receiving in value some portion of the indebtedness due their logging company, they did not receive more than approximately $10,000 in value upon their logging company's claim; rendering it at once apparent that their logging company in no event received other than a very small percentage of its unsecured claim as compared

with the dividends ultimately received by other un-
·secured creditors.

It is claimed by counsel for appellants that two or
·three of the trustees of the company personally profited
by their actions in voting for and bringing about the
sale of the company's property to Peter and Hubert
·Schafer, in that such trustees were induced to vote for
the sale by promises of certain of the principal cred-
itors made to them to cause to be canceled certain
·indebtedness owing by them, not to the company, but
to others. For the purpose of testing the validity of
·the sale and the question of whether or not the court
'should set that sale aside, we will assume that two or
three of the trustees had such promises made to them
by certain of the principal creditors, and that such
trustees did in a measure ultimately profit by the ful-
'fillment of such promises. The evidence, however,
convinces us that no such promises were made by any
of the Schafer brothers, including Albert Schafer. The
latter, it is to be remembered, did not vote as a trustee
upon the question of whether or not the sale should
be made. We may add that the evidence convinces us
that Schafer brothers were not at all anxious to make
the purchase; indeed, it seems to us to have been much
more of a case of the principal creditors inducing the
Schafer brothers to buy than it was of the Schafer
brothers inducing any one to cause a sale to be made
to them. We think the evidence warrants the conclu-
sion that none of the Schafer brothers was a party
to any wrong inducement held out to any of the trus-·
tees to vote for the consummation of the sale.

It is contended that the trustees had no authority
to make such sale as was made, because it had the
effect of putting the company entirely out of business
at a time when it was a solvent, going concern. We

have already seen that the company was not on April 14, 1921, at the time the sale was made, a solvent, going concern. If the sale was voidable because of some circumstances attending it, it was not void as a sale of all of the property and business of a going, solvent concern.

It is contended that the sale was void because made at a void special meeting of the trustees, without previous notice of the meeting and the purpose of it having been given. It is true that the meeting was a special one. We find nothing in the articles of incorporation or by-laws of the company governing the time or purpose of holding trustees' meetings, except in § 4, art. III, of the by-laws, reading as follows:

"Meetings of the board of trustees shall be held in the principal place of business of the company at Montesano, Washington, on the last Monday of each month. Special meetings may be called by the president. A Majority of the trustees shall constitute a quorum."

The meeting of April 14, 1921, was called by the president, it is true, in an informal manner and without stating its purpose, but all of the trustees were present in response to that call. Manifestly such informal call was at all events sufficient in so far as the mere notice of the meeting is concerned, and as to the claimed necessity of the notice of the meeting, including notice of the nature of the business that was to be considered at that meeting, we find nothing in the articles of incorporation or by-laws of the company requiring notice of the purpose of a special meeting, or preventing the trustees from transacting any business at such meeting that was within their power to transact at a regular meeting. We conclude that the consummation of a sale to Schafer brothers by the resolution above quoted, adopted at the trustees'

meeting of April 14, 1921, was not void because of any irregularity in the calling of that meeting, or because of the power of the trustees at that meeting being more circumscribed or limited than their power would have been at a regular meeting.

Now as to the question of whether or not the sale shall be set aside because of wrong motives of certain of the trustees in voting to consummate it at the meeting of April 14, 1921, or because of want of fair consideration as the purchase price, or because the consummation of the sale and distribution of its proceeds to the creditors of the company gave to Schafer Brothers Logging Company an undue preference as a creditor over other creditors, we think that question must be answered in the negative, in view of all the facts and circumstances here shown. Being of the opinion that the company was hopelessly insolvent on April 14, 1921; that none of the Schafer brothers was a party to any wrong inducement held out to certain of the trustees to vote for the consummation of the sale; that the price paid by Schafer brothers for the property received by them was its full and fair value, assuming that their logging company in effect received a small dividend upon its $132,000 log claim against the company, which was not to exceed a small fraction, proportionately, of what other creditors received upon their claims; we see no sound reason at this time for disturbing the sale of the property made by the company to Schafer brothers. We are fully convinced that by that transaction the company acquired for the benefit of its creditors more than could have been acquired by any other disposition of the property which Schafer brothers received as the result of that sale. We therefore conclude that the trial court did not err in refusing to set that sale aside.

This brings us to the question of whether or not the trial court erred in refusing to appoint a receiver to take charge of the remaining property and affairs of the company, including such choses in action as it may possess, looking to the subjection of such property to the equitable adjustment of and payment of the debts of the company, taking into consideration payments to creditors already made and any undue preference that may have been effected by the making of such payments. The argument of respondents' counsel seems to be that there is no property of the company for a receiver to take charge of, that all of its assets have now been equitably distributed to its creditors; and that therefore there is no cause for the appointment of a receiver. Now it may be possible that a receiver appointed for the purpose suggested will find, or have it ultimately adjudicated against him, that the condition of the affairs of the company is as claimed by counsel for respondents; but we think there is enough of a showing in this record to cause us to refrain from so determining at this time. It is enough for our present purpose to know that some of these appellants are creditors of the company, one of them being a judgment creditor; that the claimed equitable distribution of the proceeds of the assets of the company is questioned; that personal profits may have been made by certain of the trustees in connection with their voting to consummate the sale to Schafer brothers, for which such trustees in some appropriate action or actions by a receiver may be rendered liable in some form to the company; and that other property and choses in action belonging to the company may be found to exist. These considerations, it seems to us, are ample to call for the appointment of a general receiver of the Fir Products Company.

Our conclusion is that the judgment of dismissal rendered by the trial court should be affirmed in so far as it in effect affirms the sale of the company's property to Schafer brothers made in pursuance of the resolution of the company's board of trustees adopted at their meeting held on April 14, 1921; and that in all other respects the judgment of dismissal should be and is reversed. In this connection we hold that the consideration passing to the Fir Products Company for the transfer of its property to Schafer brothers was not only the sums paid and assumed by Schafer brothers, but also the cancellation of the approximately $132,000 claim of Schafer Brothers Logging Company for logs furnished by that company to the Fir Products Company; and that Schafer Brothers Logging Company must be and is adjudged to have no further claim chargeable to any of the assets of the Fir Products Company.

In view of the equities of the case, as we see them, we hold that none of the Schafer brothers, nor Schafer Brothers Logging Company, is entitled to costs incurred by any of them in the case either in the trial court or in this court as against any other parties to the action. We further hold that none of the other parties to the action are entitled to costs incurred by them in the trial court or in this court as against any of the Schafer brothers, or Schafer Brothers Logging Company. We further hold that the plaintiffs and interveners, appellants, are entitled to their costs incurred in the trial court and in this court as against the defendant Fir Products Company, in so far as appellants may have incurred costs in establishing their right to have a receiver appointed for the whole of the assets, including choses in action, apart from the property acquired by Schafer brothers in pursuance of the sale made to them.

The cause is remanded to the superior court with directions to appoint a receiver for all the business, property and assets, excluding choses in action, of the Fir Products Company, including the property received by Schafer brothers in pursuance of the sale made to them; and for such further proceedings looking to the equitable adjustment and payment of the creditors of the Fir Products Company from the proceeds of such property of that company as the receiver may be able to find and acquire in that behalf, consistent with our views and holdings expressed in this decision.

HOLCOMB, MACKINTOSH, BRIDGES, and MITCHELL, JJ., concur.