MICHIGAN WOLVERINE STUDENT CO-OPERATIVE, INC., *v.*
WM. GOODYEAR & CO.

1. CORPORATIONS—BOARD OF DIRECTORS—STATUTES—SALE OF ALL AS-
SETS.

Where statute sets forth the manner in which a corporation may
sell all or substantially all of its assets, the board of direc-
tors has no greater power than as thus specified therein (Act
No. 327, § 57, Pub. Acts 1931).

2. SAME—DIRECTORS—POWERS—STATUTES.

Powers specifically conferred upon directors of a corporation by
statute cannot be extended by inference, the inference being
that it was intended that no other or greater power was given
than that specified.

3. SAME—SALE OF ALL ASSETS—DIRECTORS—CONSENT OF MEMBERS
OF NONPROFIT CORPORATION.

Under the general corporation act the board of directors of a
nonprofit domestic corporation may not sell all or substantially
all of the assets of a corporation without the consent or ap-
proval of the holders of a majority of the shares on the ground
that the corporation is in financial distress or in a failing
condition or when they may believe it to be in such a condi-
tion (Act No. 327, § 57, Pub. Acts 1931).

4. SAME—WINDING UP AFFAIRS OF GOING CONCERN—DIRECTORS—
STOCKHOLDERS.

If a corporation, is no longer a going concern the statutes pro-
vide several methods whereby the corporation may wind up its
affairs, dispose of its assets and cease to exist but nowhere is
a board of directors authorized to wind up corporate affairs
and dispose of the assets without action by the stockholders,
or by a court (3 Comp. Laws 1929, § 15310 *et seq.;* Act
No. 327, §§ 65–73, Pub. Acts 1931).

5. SAME—SALE OF ALL ASSETS—DIRECTORS—STOCKHOLDERS—PROS-
PEROUS GOING CONCERN—COMMON LAW.

At common law neither the directors of a corporation nor a
majority of its stockholders had the right, power, or authority

to sell and convey all of the property of a going and prosperous corporation capable of achieving the objects of its creation as against the objections of a single stockholder since such action impaired the contractual obligation lying at the foundation of corporate organization and was *ultra vires.*

6. SAME—NONPROFIT—GOING CONCERN—INSOLVENCY.
Nonprofit corporation organized to promote student welfare, which had suffered a net operating loss for each of several years preceding attempted sale of its remaining assets by board of directors, not authorized by the members, *held,* a going concern and not insolvent where its assets exceeded its liabilities by a sum sufficient so that at present rate of dissipation of assets, it would not reach point of insolvency for several years.

7. SAME—NONPROFIT—SALE OF ALL ASSETS—DIRECTORS—CONSENT OF MEMBERS.
Attempted sale of real estate, the sole remaining asset of nonprofit corporation, by board of directors was void where it was without the consent of a majority of its members (Act No. 327, § 57, Pub. Acts 1931).

Appeal from Washtenaw; Sample (George W.), J. Submitted April 4, 1946. (Docket No. 50, Calendar No. 43,321.) Decided May 13, 1946.

Bill by Michigan Wolverine Student Co-operative, Inc., a Michigan corporation, against Wm. Goodyear & Company, a Michigan corporation, and another to cancel and set aside a deed, for an accounting and other relief. Decree for defendant. Plaintiff appeals. Reversed and decree entered cancelling deed and cause remanded for accounting.

*DeVine & DeVine (Hobart Coffey,* of counsel), for plaintiff.

*Roscoe O. Bonisteel (Burke, Burke & Smith,* of counsel), for defendant.

BOYLES, J. In this case a bill of complaint was filed by plaintiff corporation to set aside a deed of

its real property to the defendant, on the ground that it had been executed and delivered by plaintiff's officers by authority of its directors without the consent of its members, contrary to the provisions of section 57 of the general corporation act.* Plaintiff is a Michigan nonprofit corporation organized for the purpose of promoting student welfare at Ann Arbor. The defendant is a Michigan corporation carrying on a mercantile business in the city of Ann Arbor. The Ann Arbor Trust Company was also made a defendant when the bill of complaint was filed, but on motion the case was dismissed as to the trust company, and no appeal has been taken from the order of dismissal. The circuit judge denied cancellation of the deed and from the decree entered thereon plaintiff appeals.

Prior to April 6, 1944, the plaintiff Co-operative was the owner of certain real estate on South State street in Ann Arbor where it conducted a restaurant business and also rented some second-floor rooms. Its active membership consisted of and was limited to students in the university. To become a member, the student paid a $5 fee and signed a membership card, whereupon his membership card was added to the card index of membership. The student continued as a member only so long as he was an actual student enrolled in the university. It was then customary to return the $5 membership fee when the student was no longer in the university. At one time, when student enrollment in the university was high, plaintiff Co-operative had over 500 members. Due to war conditions and lack of student enrollment, the membership had dwindled to 106 members in 1944 when the deed in question

---

* Act No. 327, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 10135-57, Stat. Ann. § 21.57).

was given, and these were "somewhat scattered" due to war conditions.

Plaintiff's real estate consisted of a house on South State street, only a block off the campus, which had been made over into a restaurant on the first floor, with rooms on the second floor. It had no heating plant of its own, and for heat and hot water depended on a contract with an adjoining landowner, under which it was obligated to expend about $2,000 each year. Plaintiff's overhead expenses continued, notwithstanding its loss of memberships. It was losing money steadily. According to one set of figures introduced in evidence, it appears that during the period from June 10, 1942, to May 15, 1943, plaintiff's net operating loss was $7,870.86. There is no question but that the Cooperative was losing money and its debts were increasing. The point was reached where it did not have funds to buy the supplies needed to operate the restaurant. Attempts to lease the restaurant and equipment as a business were unsuccessful, and about March 1, 1943, the restaurant was closed. At that time plaintiff's assets consisted of the restaurant equipment and furniture and personal property, worth perhaps $4,500, and the real estate worth somewhere about $15,000 which had been mortgaged to the Ann Arbor Trust Company with a balance due on the mortgage of about $7,400. There is no question but that plaintiff was solvent.

After the restaurant was closed early in 1943, plaintiff's sole income was from rental of the second-floor rooms from which it received $140 per month. Plaintiff was still burdened with overhead on its building management for heat, light, gas, insurance, laundry, taxes and upkeep. Plaintiff could not borrow money, and at that time (1943) had lit-

tle or no cash on hand. However, its net operating loss was materially decreased after the restaurant was closed about March, 1, 1943, and its net operating loss from March 23, 1943, to May 8, 1944, was only $1,134.88 according to plaintiff's figures, or $1,671.50 according to defendant's claim, depending on what should be considered as operating expenses. During that period of time, from March, 1943, to May, 1944, a vice-president of the Ann Arbor Trust Company was managing agent for plaintiff's real estate. Plaintiff's treasurer closed up his books, turned financial management over to the trust company, and furnished the trust company a statement showing the financial condition of the Co-operative as of May 15, 1943. It showed current assets—cash, accounts receivable, inventories of supplies—amounting to about $1,300, and current liabilities of $515, plus notes payable to members but not yet due $2,800. In addition, plaintiff owned the real estate in question, valued at $15,000 mortgaged to the trust company for $7,477.66.

On February 8, 1944, after the restaurant had been closed nearly a year and the trust company had been managing the real estate for about the same length of time, plaintiff's board of directors met and discussed the financial status of the corporation. A cash offer of $4,300 had been received for the restaurant equipment and $15,000 for the real estate. The board passed two separate resolutions authorizing and directing the president and secretary to sell the restaurant equipment and furniture for $4,300, and to sell the land and building for not less than $15,000.

Pursuant to the first of the above resolutions, the restaurant equipment and furniture was sold for $4,300. No question is raised regarding the legality of the sale of the personal property. The land and

building on South State street was the only remaining asset of any material value owned by the corporation. Pursuant to the second of the above resolutions, on February 17, 1944, the plaintiff corporation, through its president and secretary, entered into a sales agreement with the defendant Wm. Goodyear & Company, in which it was stipulated that the plaintiff corporation would sell said premises to the defendant for $15,000; and $1,000 was paid down by the defendant. The defendant requested that the plaintiff obtain from its members a ratification of the action of its board of directors and officers, at its annual meeting to be held on May 1st. Before that date arrived, and on April 6, 1944, the plaintiff, the defendant, and the Ann Arbor Trust Company as party of the third part, entered into an escrow agreement whereby the plaintiff, by its president and secretary, agreed to execute a warranty deed of the real estate to the defendant, to place the deed in escrow with the Ann Arbor Trust Company and to place in escrow with the trust company the $1,000 down payment it had received. The defendant agreed to deposit an additional $5,000 in escrow with the trust company. These arrangements were carried out—the deed was executed and, together with the $6,000, deposited in escrow. In the escrow agreement the plaintiff, by its president and secretary, further agreed to call an annual meeting of its members and to present to its members at such meeting for ratification the aforesaid acts and resolutions of its board of directors.

Such a meeting was called for May 1, 1944, and adjourned to May 9th for lack of quorum, but no motion to ratify said acts of the board of directors was offered. A different motion was offered, to authorize the directors to sell the real estate, but voted down. For the purposes of this case it is sufficient

to say that the acts of the officers and board of directors, in connection with the sale of the real estate, have never been consented to, approved or ratified by any action taken by any of the members of the plaintiff corporation.

The escrow agreement further provided that after the annual meeting of its members, plaintiff's officers were to furnish confirmation by its membership of the sale of the real estate, and the defendant was then to pay the additional $9,000 in cash, or by assuming the trust company's mortgage, or each in proportion. The escrow agreement further provided that in the event the membership of the plaintiff corporation failed or refused to ratify the sale and the acts of its officers and directors, the defendant would have the option to accept the deed and make the payment of the balance due, or to refuse to accept the deed and have a return of the sums already placed in escrow.

On or about May 10, 1944, the defendant elected to take the deed without the ratification by the members, the trust company delivered the deed to defendant, the defendant put the deed on record and paid the balance of the purchase price over to the trust company. Plaintiff refused to accept from the escrow agent the money deposited by the defendant and filed the present bill of complaint in the circuit court for the county of Washtenaw in chancery, seeking to declare the deed void and to have it set aside, on the ground that the officers of the plaintiff corporation and its board of directors had never been authorized by the members of plaintiff corporation to sell said real estate, and that the deed executed without such authorization or ratification was void. An accounting by the defendant for the period of time it has held possession of the real estate under the deed was also prayed for by plaintiff, but

upon the hearing of the cause it was agreed to submit to the trial court the issue as to the validity of the deed and that, in the event the deed was decreed to be void, testimony would later be taken upon the other issues involved in the case.

The only question for consideration on this appeal is whether the deed of the real estate of the plaintiff corporation, pursuant to authority of its board of directors and executed by its officers, without the consent of a majority of its members, should be set aside as a matter of law.

It is the contention of the defendant that plaintiff, at the time of the execution and delivery of the deed, was in financial distress, in a hopelessly failing condition, and that therefore its board of directors had the power to sell the real estate in what they conceived to be for its best interest. The plaintiff contends that it was not insolvent or in a hopelessly failing condition. It contends further that whether or not it was insolvent or in a hopelessly failing condition its directors and officers, in order to sell all or substantially all of the corporate property, must have the consent of the holders of a majority of its shares. It further contends that its officers and board of directors, in order to wind up its affairs, must follow the procedure set out in the statutes (3 Comp. Laws 1929, § 15310 *et seq.* [Stat. Ann. 1943 Rev. § 27.2354 *et seq.*]; Act No. 327, § 65 *et seq.*, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 10135-65 *et seq.*, Stat. Ann. § 21.65 *et seq.*]).

It is conceded that plaintiff was and is a corporation formed and existing under the provisions of the general corporation law, Act No. 327, Pub. Acts 1931. Section 57 of this act (Comp. Laws Supp. 1940, § 10135-57, Stat. Ann. § 21.57) provides:

"Every corporation formed or existing under this act may sell, lease or exchange all or substantially

all of its property and assets, including its good will and its corporate franchises, upon such terms and conditions and for such consideration, which may be in whole or in part shares of stock in, and/or other securities of, any other corporation or corporations, domestic or foreign, as its board of directors shall deem expedient and for the best interests of the corporation, *when and as authorized by the affirmative vote of the holders of a majority of the shares issued and outstanding given at a shareholders' meeting duly called for that purpose,* or when authorized by the written consent of the holders of a majority of the shares issued and outstanding: *Provided,* That the articles may require the vote or written consent of the holders of a larger proportion of the shares issued and outstanding.''

While section 57, *supra,* states in the affirmative the manner in which a corporation may sell all or substantially all of its assets, under a well-established rule of statutory construction it must be held that no other or greater power is given to boards of directors by the statute than as thus specified therein.

''It is a well-established rule of statutory construction that where powers are specifically conferred they cannot be extended by inference, but that the inference is that it was intended that no other or greater power was given than that specified.'' *Eikhoff* v. *Detroit Charter Commission,* 176 Mich. 535, 540.

''Under the legal maxim of construction that express mention of one thing implies the exclusion of other similar things, there is reason in the contention that, the act having expressly named certain liens made subordinate, it by implication excludes others not mentioned, upon the presumption that, having designated some, the legislature designated

all it was intended the act should include." *Marshall v. Railway Co.,* 201 Mich. 167, 172 (8 A. L. R. 435).

"It is a familiar rule that inclusion by specific mention excludes what is not mentioned." *Van Sweden* v. *Van Sweden,* 250 Mich. 238, 241.

" 'It is a general principle of interpretation that the mention of one thing implies the exclusion of another thing; *expressio unius est exclusio alterius.'* 25 R. C. L. p. 981." *Dave's Place, Inc.,* v. *Michigan Liquor Control Commission,* 277 Mich. 551, 555.

The defendant contends in effect that under the common law there is an exception to section 57, that the plaintiff was "in financial distress," that at common law the directors of a corporation "in financial distress" may sell all of its assets without consent of stockholders, and that section 57 of the Michigan general corporation act does not apply to corporations "under conditions of financial distress." This was, in effect, the holding of the circuit judge in his opinion, where the court said:

"In other words, the pleadings and the evidence present the naked legal proposition of whether the board of directors of a corporation, if not a going and prosperous concern, has the power to dispose of substantially all of its assets, without stockholder authorization, if in the judgment of the board such action is deemed to the best interests of the corporation.    *    *    *

"The issue for decision is whether the plaintiff corporation was, at the time of the transfer, a going and prosperous concern.    *    *    *

"With these facts before the court, the court must decide whether or not the plaintiff corporation was a going and prosperous concern, or whether it was in a failing condition."

We are not in accord with the proposition that in this State the directors of a domestic corporation may sell all or substantially all of the assets of the corporation without the consent or approval of the holders of a majority of the shares, on the ground that the corporation was "in financial distress" or "in a failing condition." In this case, plaintiff being a nonprofit co-operative corporation with 106 active members as equal shareholders, the approval of 54 of such members was essential to the validity of the action taken by the board of directors and officers. Not only is such approval lacking here, but on the contrary at a meeting of less than that number of members such consent and approval was, in effect, refused. The statute does not authorize the board of directors of a corporation to sell all or substantially all of the corporate assets whenever, in the opinion of the directors, the corporation is not a going and prosperous concern, or is in a failing condition. If a corporation is no longer a going concern the statutes provide several methods whereby the corporation may wind up its affairs, dispose of its assets, and cease to exist. None of these methods authorizes a board of directors to wind up corporate affairs and dispose of the assets without action by the stockholders, or by a court. See Act No. 327, §§ 65–73, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 10135–65—10135–73, Stat. Ann. §§ 21.65–21.73); 3 Comp. Laws 1929, § 15310 et seq. (Stat. Ann. 1943 Rev. § 27.2354 et seq.).

Plaintiff corporation was a going concern at the time its board of directors attempted to dispose of substantially all of its assets and, so far as disclosed by the record, still is. While it was not then conducting a restaurant, it still owned the premises in which such business had been conducted until lack of student enrollment curtailed its revenues. It

was for the members to decide whether to sell out, or to hold on to their real estate in the face of continuing losses on the prospect of increased enrollment and a revival of corporate prosperity. Plaintiff was organized and incorporated to promote the welfare of students in the university, not for profit to its members. It was still a "going concern" for the purpose for which it came into existence.

We find no decision of this court stating whether a board of directors and officers of a corporation in financial distress or in a failing condition may convey all or substantially all of its assets, without the consent of the holders of a majority of its shares, or in this case a majority of its members. There is no express statutory authority for such action. Counsel for defendant argues that this may be done, under the common law, when the corporation is "in financial distress." However, this court has considered the powers of a board of directors at common law to sell all of the property of a going corporation. In *Voigt* v. *Remick*, 260 Mich. 198, the court held that a board of directors, at common law, lacked such power. While the *Voigt Case, supra,* arose at the instance of a single stockholder of a "going and prosperous" corporation, the decision is directly in point as to the powers of a board of directors at the common law. The court said (pp. 205, 206):

"At common law, neither the directors of a corporation nor a majority of its stockholders had the right, power, or authority to sell and convey all the property of a going and prosperous corporation capable of achieving the objects of its creation as against the objections of a single stockholder. *Forrester* v. *Boston & Montana Consolidated Copper & Silver Mining Co.*, 21 Mont. 544 (55 Pac. 229, 353); *Bulkley* v. *Big Muddy Iron Co.*, 7 Mo. App.

589; *Price* v. *Holcomb,* 89 Iowa, 123 (56 N. W. 407);
*City of St. Louis* v. *St. Louis Gaslight Co.,* 70 Mo.
69; *Byrne* v. *Schuyler Electric Manfg. Co.,* 65 Conn.
336 (31 Atl. 833, 28 L. R. A. 304); *Tillis* v. *Brown,*
154 Ala. 403 (45 South. 589); *Kean* v. *Johnson,*
1 Stockt. Ch. A. (9 N. J. Eq.) 401; *Smith* v. *Stone,*
21 Wyo. 62 (128 Pac. 612); *Taylor* v. *Earle,* 8 Hun
(N. Y.), 1; *Abbot* v. *American Hard Rubber Co.,* 33
Barb. (N. Y.) 578.　*　*　*

"A sale of the corporate property of a private
corporation, *though authorized by a majority of
the stockholders,* which in effect operated to dis-
continue the corporate enterprise and thwart the
purposes of the creation of the corporation, against
the objections of a single stockholder, *at common
law,* impaired the contractual obligation lying at
the foundation of corporate organization and was
*ultra vires.*

" 'The general doctrine that a board of directors
of a corporation cannot sell out its business and
property and defeat the object of its organization
without the consent of the stockholders, may be
conceded, but it has no application in a case where
*in the charter creating it* such power has been con-
ferred on the directors.' *City of St. Louis* v.
*St. Louis Gaslight Co.,* 70 Mo. 69, 98."

The above case differs from the situation now
before us in that this plaintiff Co-operative at the
time the deed was given was not a "prosperous"
corporation although it was a going concern, and
probably not incapable of achieving the objects of
its creation, namely: the promotion of student wel-
fare.

Under section 57 of the corporation act, *supra,*
the authority of a board of directors to sell all or
substantially all of the property of the corporation
is defined by statute. Assuming, *arguendo,* that
there is room in the statute for an exception as
applied to corporations in financial distress, or in

a failing condition, the facts and circumstances of the case here involved do not bring plaintiff within such an exception, as it has generally been referred to in the decisions from other jurisdictions and statements from text writers relied upon by counsel for defendant. On April 6, 1944, when the deed and escrow agreement were executed, the plaintiff had cash in bank in the sum of $2,869.73, consisting of the balance from the sale of its personal property. Its real estate was admittedly worth $15,000, subject to the mortgage of about $7,400 held by the Ann Arbor Trust Company. Plaintiff owed $2,800 to its members on notes which were not yet due. Plaintiff's assets at the time of the execution and delivery of the deed in escrow were approximately $10,000 and exceeded its liabilities by over $7,880. Plaintiff was far from being insolvent, and at the then rate of dissipation of its assets it would not reach the point of insolvency—when its assets no longer exceeded its liabilities—for several years. The trust company was not pressing for reduction or payment of its mortage, interest thereon was paid to date, plaintiff was not threatened with suits, the $2,800 notes payable were not due, and plaintiff had over $2,800 in the bank, sufficient to cover prospective losses for some time. Under these circumstances it was for the members, not the board of directors, to decide whether to hold on to the real estate, or to sell it. The members decided to hold the real estate for possibility of future use, although that plan would result in at least temporary further losses.

The decisions from other jurisdictions and statements of text writers, relied on by defendant to establish the common-law exception to the statute, usually refer to circumstances quite different from those here involved. Some cases refer to the ab-

sence of statutory provisions, to insolvency, or where the action was brought by either a minority stockholder, or by the majority. Such decisions as follow are not authority under the circumstances before the court in this case:

A *bank* being "in failing circumstances." *Sherrard State Bank, for use of Moberg, v. Vernon,* 243 Ill. App. 122.

"Financially involved and insolvent, and the creditors are pressing their claims, * * * where it is regarded as of imperative necessity." *Oskaloosa Savings Bank v. Mahaska County State Bank,* 205 Iowa, 1351 (219 N. W. 530, 60 A. L. R. 1204).

"The corporation is insolvent or in failing circumstances and the sale is made for the purpose of closing up the corporate affairs." 18 C. J. S. p. 1197, Corporations, § 515.

"In the absence of a statute requiring the consent of stockholders, the directors of a corporation in failing circumstances may sell * * * without the consent of the stockholders." 13 Am. Jur. p. 923, § 963, Sale and Conveyance of Corporate Property.

"When the corporation is not a going concern, and * * * on the verge of insolvency." *City National Bank of Huron, S. D., v. Fuller* (C. C. A.), 52 Fed. (2d) 870 (79 A. L. R. 71).

"Not * * * at the time the sale was made, a solvent, going concern." *Homan v. Fir Products Co.,* 123 Wash. 260 (212 Pac. 240).

This case is controlled by section 57 of the general corporation act, *supra.* The consent or approval of a majority of plaintiff's members was essential to the authority of the board of directors to effect the sale of the real estate in question. Lacking such authority, the attempted sale is void.

A decree may be entered in this court cancelling the deed, requiring defendant to reconvey the real estate to plaintiff, to provide that in lieu thereof the decree may be recorded as such reconveyance, and remanding the case for accounting and such further relief as may be appropriate to the issues involved. Costs of both courts to appellant.

Butzel, C. J., and Carr, Bushnell, Sharpe, Reid, North, and Starr, JJ., concurred.