## Daniel E. Grover v. Joseph D. Huckins.

*Village ordinance: Impounding animals.* The village ordinance of April 8, 1870, "relative to the restraining and impounding of animals," passed by the common council of Wenona, held valid and within the power specifically conferred by the village charter.

*Charter of Wenona: Impounding animals.* The authority conferred by the charter upon the common council, is not limited simply to a "taking up, impounding, and sale for a penalty;" the power is given ": to establish one or more pounds and regulate and restrain the running at large of cattle, etc., in the streets and public places in said village;" and this power includes the customary means of prevention, such as the sale of the animals for the costs and expenses of impounding and keeping. Where a power is conferred, a resort to the usual means in its execution must be understood as intended, unless others are indicated.

*Impounding animals: Sale for costs, etc.: Penalty.* The power to provide for a sale for costs of impounding and keeping, having been superadded to the power to sell for a penalty, it is not necessary to the valid exercise of the former, that a penalty should be imposed also, and punishment inflicted to the full extent of the law; it is generally competent, so far as the party punished is concerned, to omit a severable part of the legal penalty for a breach of the penal laws.

*Impounding animals: Sales: Costs and expenses: Penalty.* The costs and expenses referred to in the ordinance, are not the costs of imposing or enforcing a penalty, nor are they an incident to a penalty; but they are the "costs of impounding," etc.; and for these a sale is clearly authorized.

*Sale of animals impounded: Costs, etc.: Penalty.* Whether these costs and expenses might not be properly considered as a penalty imposed upon the owner for rendering necessary these proceedings in the abatement of a nuisance:— *Quære ?*

*Sale of animals impounded: Due process of law.* The ordinance in question is not open to the objection that it forfeits the beasts impounded, without judicial proceedings, and without notice to the owner, and consequently without due process of law.

*Animals impounded: Replevin: Ordinance.* Where the pound has been broken open, and the animals have either been driven away or have escaped, and are afterwards found outside the village limits, the pound-master may bring replevin; and if he sues out his writ within the village, and it is served beyond the village limits, but within the jurisdiction of the magistrate issuing it, the sustaining of the suit does not involve the giving extra-territorial effect to the ordinance.

*Heard January 9. Decided April 9.*

Error to Bay Circuit.

*T. F. Shepard,* for plaintiff in error.

*Taylor & Wheeler,* for defendant in error.

COOLEY, J.

The plaintiff in error, at the time of commencing proceedings in the court below, was pound-master of the village of Wenona. As such, he took up and impounded certain horses belonging to defendant, which were found at large within the streets of the village. Afterwards, the pound appears to have been broken open, and the horses were either driven away or escaped. They were found in possession of defendant, outside the village limits, and the plaintiff replevied them. On the trial of the replevin suit, various objections were taken to a recovery, among which was, that the village ordinance for impounding horses, etc., under which the plaintiff acted, was void. This objection the circuit judge sustained, and directed a verdict for the defendant.

The ordinance is supposed to be invalid because not within the power specifically conferred upon the common council by the village charter. Section 23 of the charter (*Laws 1869, Vol. 2, p. 544*) provides, that among other things, the common council shall have power "to establish one or more pounds, and regulate and restrain the running at large of cattle, swine, horses, mules, sheep, and other animals, and of geese, or other poultry, in the streets and public places in said village, and to authorize the taking up, impounding, and sale of the same, for the penalty incurred, and the costs of keeping and impounding, and to punish for rescuing the same before all costs and charges are paid." In supposed execution of the power conferred by the charter, the common council, on the eighth day of April, 1870, passed the "ordinance relative to the restraining and impounding of animals" which is now in question. The first and second sections provided for the establishment of a pound, and the appointment and qualification of a pound-master. The third section forbade the running at large of

horses and other enumerated animals, within the limits of the village. The fourth section made it the duty of the pound-master and marshal, and lawful for any other resident of the village over twelve years of age, to take up and convey to the pound, any animals found running at large in the village and liable to be impounded under section three, and it provided that for such service, the person performing it should receive a fee when the animals should be reclaimed or sold, and which, in the case of a horse, should be seventy-five cents. The fifth section required the pound-keeper to care for and feed the animals in his charge, and the eighth section entitled him to demand and receive certain specified fees for receiving, discharging, or selling any such animals. The sixth, seventh, and ninth sections are as follows:

"SEC. 6. The pound master shall, on Friday of each week, commencing at ten o'clock in the forenoon, at the public pound, sell at public auction any horse, mule, ass, or neat cattle, except calves, which have been impounded therein for a period of six days, and all other animals which have been impounded therein for a period of three days, and are unreclaimed, or whose owners refuse to pay the fees hereinafter provided, and on such sale the pound master shall execute a bill of sale to the purchaser of such animals, and such bill of sale shall be *prima facie* evidence of the regularity of the proceedings from the impounding to the sale of such animals, inclusive the day on which any animal was received, and the day of sale shall be included in estimating the time under this section. Notice of such sale shall be given, and shall contain a description, as near as may be, of the animal to be sold, and such notice shall, on the Wednesday previous to such sale, be posted in conspicuous positions in the following places, to wit: at the recorder's office, at the post-office, and at the pound.

" Sec. 7. The proceeds arising from the sale of any animal, less the fees, costs and charges allowed by this ordinance shall, on Friday of each week, be paid into the village treasury, and shall constitute a separate fund, and shall be delivered to the former owner of such animal, on sufficient proof to the treasurer that he or she was such owner: *Provided, however,* That all money deposited as aforesaid, which may remain unreclaimed for the period of one year, shall be transferred and credited by the treasurer to the general fund."

"Sec. 9. The owner of any such animal may, at any time before sale, reclaim the same upon payment to the pound-master of the fees provided for in this ordinance: *Provided,* That when animals are reclaimed, the day on which they are impounded, and the day on which they are reclaimed, shall be estimated as one entire day each, unless such animal is reclaimed the same day upon which it was impounded, and in such case it shall be estimated as one day."

The specific objections made to the ordinance, and which have been elaborately and ably discussed by counsel, we shall consider in their order as they were presented on the argument.

*First,* it is said, "the charter authorizes the taking up, impounding and sale of animals for 'the *penalty* incurred, and the costs of keeping and impounding.' This is an implied prohibition against the taking up, impounding and selling for any other purpose." "No *penalty* has been imposed by this ordinance for the running at large of animals in the streets and public places; consequently there is no authority for taking up and impounding animals running at large, and certainly there is no authority for holding animals after their impounding, simply for the purpose of making costs, and making sale to pay the costs."

This is a short statement of the position taken by the defendant.

This position assumes that the authority conferred upon the council over the subject matter, is wholly conferred and limited by the words here quoted from the charter, and can only be exercised by a " taking up, impounding and sale for a *penalty*." But, although these words indicate at least one mode in which the power is to be exercised, we doubt if they are to be regarded as the vital, or even a necessary part of the section in which they occur. They are preceded by words which give the council full power " to establish one or more pounds, and regulate and restrain the running at large of cattle, swine, horses, mules, sheep and other animals, and of geese and other poultry, in the streets and public places in said village." These words alone would confer full authority to provide against the running at large of the animals mentioned, and to establish the customary means of prevention; and where certain means had from time immemorial been employed for that purpose, such as the sale of the animals for the costs and expenses of impounding and keeping, we cannot doubt that those means were within the contemplation of the legislature in conferring the power of restraint by these words. It is not a barren power that was meant to be conferred, but a power by means of " one or more pounds " to " regulate and restrain the running at .large of beasts." Now, the mode usually provided by general law, by which the impounding of beasts is rendered effectual, to restrain their running at large, is a sale to cover the costs, fees, and expenses; this being so, we think it not important that the section of the statute in question should go beyond the words here cited, in order to authorize the council to make provision for a resort to that mode for the purpose specified. Where a power is conferred, a resort to the

usual means in its execution must be understood as intended, unless others are indicated.    This view of the statute appears so plain to us, that a reference to authorities scarcely seems necessary.    Two cases, however, may be briefly referred to.    In *Gosselink v. Campbell, 4 Iowa, 296,* power in a city charter "to prohibit stock from running at large in the city, and to make any other ordinary, suitable, and proper police regulations, and to impose fines and penalties for the violation of such regulations," was held to support an ordinance which, after declaring it a misdemeanor to suffer swine to run at large, and imposing a fine for so doing, authorized the impounding and sale of the swine for the satisfaction of the costs and charges of impounding. The ordinance in that case went farther, and purported to authorize a sale for the satisfaction of the fine also; and, though to this extent it was held too broad, as misdemeanors are not to be punished by a seizure and sale of property, yet this did not invalidate the provisions for the impounding and sale, which were customary and suitable means for abating the nuisance of beasts being at large contrary to law.

In *Whitlock v. West, 26 Conn., 406,* a general authority to towns "to make by-laws for restraining cattle, etc., from going at large, and for regulating such as go at large," though not mentioning impounding as a mode of restraint, was held nevertheless to authorize the towns to resort to that remedy.    The court well remarked, "According to a familiar principle in relation to such a grant of power, the towns may use all the necessary and proper means of exercising it.    It is obvious that no means could be more necessary or proper to carry this power into effect than to confine them in some suitable inclosure.    And no inclosure could be more suitable than a pound established by law, and under the supervision and and control of officers

appointed for that purpose." The only answer to this view, which was suggested on the argument, is that the statute having gone farther, and expressly authorized a sale of the impounded beasts to satisfy a *penalty* and costs, by implication, it excludes the right to make a sale, except for the particular purpose specified, and consequently excludes it in every case where no penalty is imposed.

But this view also may, perhaps, be answered by the case of *Gosselink v. Campbell, supra,* where the special remedy named—that is, the imposition of a fine—was held not to exclude other usual, suitable, and not inconsistent remedy by impounding. But we think that the objection is based upon unfounded premises.

The power to make sale for the costs of keeping and impounding superadded to a penalty, is given in express terms. The question then arises, Is it necessary to a valid exercise of this power that the council should go to the full extent of the authority conferred, and impose a penalty for the nuisance before they are to be permitted to render an impounding effectual by a sale for the costs and charges? The defendant contends that it is; in other words, he insists that the council must resort to all the means of restraint allowed by the statute, and must punish him to the full extent of the law, or their action will be ineffectual, where less than all, and a part of the punishment only, is, in the opinion of the council, sufficient for the purpose. In answer to this, it may be said that generally a party is not to be heard to complain, if, in the punishment for a breach of the penal laws, some severable part of what is, or should be, the legal penalty, is omitted.— *Kane v. People, 8 Wend., 203; Dodge v. State, 4 Zab., 455; McQuoid v. People, 3 Gilm., 76.*

This principle is applicable here, unless the costs and charges are an incident to a penalty; in which case it

might well be urged, that if there were no penalty, there could be no costs and charges.    But this is not the case here.    The costs spoken of are not the costs of imposing or enforcing a penalty, but the "costs of impounding." For these a sale is clearly authorized; and if the council did not deem it necessary or important to go farther, and provide a distinct and separate penalty, we think that, instead of exceeding their authority in the provisions of the ordinance, they have taken care to keep as far within its limits as was consistent with the accomplishment of the general purpose for which the authority was given.

We have considered this point on an assumption that the costs of taking up, discharging, and selling, could not be considered as a penalty imposed upon the owner for rendering necessary these proceedings in the abatement of a nuisance.    But we by no means decide that such is the case.    The term penalty is used very loosely in statutes in some cases, and might, without much strain of its ordinary meaning, be held to embrace all the consequences visited by law upon the heads of those who violate police regulations.    But as we see no necessity for considering whether that may not be the reasonable interpretation of the word in this section of the charter, we pass it by without further remark.

Secondly, it is insisted that the act forfeits the beasts impounded without judicial proceedings, and without notice to the owner; and consequently without due process of law. But clearly there is no forfeiture in the case.    There is provision for a sale to cover the costs and charges, if the owner fails to reclaim the property; and any surplus on a sale belongs to the owner.    This is no forfeiture, but instead, there is an ordinary remedy for a particular public grievance.    It is true no judicial hearing is provided for, but a notice, such as is likely under the circumstances to

reach the party concerned, is required, and the owner, if he believes his property has been wrongfully and illegally seized, has ample remedy by suit in replevin, or for its value. And if a sale is made, and proves to be legal, he still has his interest in the property saved to him, after the costs and charges are deducted.

*Thirdly,* it is argued that even if the court erred in holding the ordinance invalid, the judgment should nevertheless be affirmed, because the ordinance could have no force beyond the limits of the village; and as it affirmatively appeared that the property when replevied was beyond the village limits, the suit must fail upon that ground if upon no other. It is not necessary, however, to give the ordinance extra-territorial effect in order to sustain this suit. The plaintiff had rightful possession of the property and a lien upon it, at the time it was released from the pound; and within the village at least, he may resort to any proper remedy to enforce the right. And when he sues out the proper process within the village, he may have it served anywhere within the jurisdiction of the magistrate issuing it.

On a review of the whole record, we think the judgment should be reversed, with costs, and a new trial ordered.

The other Justices concurred.