MICHIGAN & VICINITY CONFERENCE BOARD, INTERNA-
TIONAL MOLDERS & FOUNDRY WORKERS UNION OF
NORTH AMERICA, A. F. OF L., *v.* ENTERPRISE FOUNDRY
CO.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—DECLARATION OF
RIGHTS—ASSOCIATIONS—PARTIES.

In suit for declaration of rights under a provision of the oc-
cupational disease amendment of the workmen's compensa-
tion act, the question as to whether or not a voluntary un-
incorporated association of labor unions was a proper party
in such proceeding is not determined where there were two
of defendant employer's employees joined as plaintiffs (3
Comp. Laws 1929, § 13903; Act No. 10, pt. 7, § 4, Pub. Acts
1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937,
and amended by Act No. 318, Pub. Acts 1945).

2. SAME—DECLARATION OF RIGHTS.

Where the applicability of the declaratory judgment statute is
not challenged in suit brought thereunder, the Supreme Court
expresses no opinion relative to such matter. (3 Comp. Laws
1929, § 13903).

3. CONSTITUTIONAL LAW—WISDOM OF LEGISLATION—COURTS—AMEND-
MENT OF WORKMEN'S COMPENSATION ACT.

Fact that an amendment to the workmen's compensation act
requiring periodic physical examinations of employees al-
though appearing to be beneficial to the employees was

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am. Jur., Workmen's Compensation, § 419.
[2] 16 Am. Jur., Declaratory Judgments, § 76.
[2] Declaration of rights or declaratory judgments. 12 A.L.R. 52;
19 A.L.R. 1124; 50 A.L.R. 42; 68 A.L.R. 110; 87 A.L.R. 1205,
1250.
[3, 6] 58 Am. Jur., Workmen's Compensation, § 8.
[4] 58 Am. Jur., Workmen's Compensation, § 81.
[5] 12 Am. Jur., Constitutional Law, § 476.
[6] 12 Am. Jur., Constitutional Law, § 495.
[7] 58 Am. Jur., Workmen's Compensation, § 543.

primarily for the benefit of workmen's compensation insurance carriers has no bearing upon the matter of constitutionality of such amendment as the wisdom of such legislation is a legislative responsibility with which courts may not interfere (Act No. 10, pt. 7, § 4, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 318, Pub. Acts 1945).

4. SAME—REGULATION OF BUSINESS—DISCRETION OF LEGISLATURE.

The selection of the businesses requiring regulation is not subject to judicial review unless it clearly appears to have been exercised arbitrarily and without any show of good reason.

5. SAME—FAILURE OF STATUTE TO INCLUDE ALL SUBJECTS—DISCRIMINATION.

A law is not rendered discriminatory by the mere fact that it does not cover every subject which the legislature might conceivably have included in it, it being enough that the subjects covered possess such intrinsic peculiarities justifying legislative determination that those subjects require special enactment.

6. WORKMEN'S COMPENSATION—DUST DISEASES—COMPLETE PHYSICAL EXAMINATION—DUE PROCESS.

While statute requiring employers of workers exposed to dust to furnish latter free complete physical examinations not oftener than once a month each 6 months and disentitling an employee from benefits in case of refusal to submit to such examinations is not unconstitutional because it does not apply to other groups of employees, it is invalid as a denial of due process, since it is not shown the desired end can be accomplished by the means provided, is indefinite, uncertain and unreasonable as the penalty provision might operate in perpetuity and deprive employees of compensation whether related to dust diseases or not (Act No. 10, pt. 7, § 4, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 318, Pub. Acts 1945).

7. COSTS—PUBLIC QUESTION—DECLARATION OF RIGHTS—COMPULSORY PHYSICAL EXAMINATION UNDER THE WORKMEN'S COMPENSATION ACT.

No costs are allowed in suit for declaration of rights under provision of workmen's compensation act requiring employers of persons exposed to dust to furnish a free complete physical examination, a public question being involved (3 Comp. Laws 1929, § 13903; Act No. 10, pt. 7, § 4, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 318, Pub. Acts 1945).

Appeal from Kalamazoo; Miller (Guy A.), J., presiding. Submitted January 16, 1948. (Docket No. 10, Calendar No. 43,655.) Decided May 18, 1948.

Bill by Michigan & Vicinity Conference Board, International Molders & Foundry Workers Union of North America, A..F. of L., against Enterprise Foundry Company and others for decree declaring Act No. 318, Pub. Acts 1945, unconstitutional. Gus Wancour and another added as parties plaintiff. Decree for defendants. Plaintiffs appeal. Reversed and decree entered for plaintiffs.

*Edward J. Ryan* (*Russell V. Carlton,* of counsel), for plaintiffs.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, for defendant Commissioners of Department of Labor and Industry.

Bushnell, C. J. Plaintiff Michigan and Vicinity Conference Board, together with plaintiffs Gus Wancour and John Friedrich, both employees of defendant Enterprise Foundry Company, seek a declaratory decree with respect to the provisions of Act No. 10, pt. 7, § 4, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 318, Pub. Acts 1945 (Comp. Laws Supp. 1945, § 8485--4, Stat. Ann. 1947 Cum. Supp. § 17.223).

The conference board is an unincorporated association composed of 14 unions of the International Molders & Foundry Workers Union of North America (AFL) having approximately 4,200 members within the State of Michigan. Defendant Enterprise Foundry Company operates a foundry in the city of Detroit and employs a number of individual molders who are members of one of the locals

represented by plaintiff conference board. Defendant American Mutual Liability Company is the defendant's insurer under the workmen's compensation act. The remaining defendants are the commissioners of the department of labor and industry of the State of Michigan.

The act, *supra,* involved in the present controversy, reads as follows:

"Provided, further, That all employers subject to the provisions of this act shall furnish to their employees without charge a complete physical examination at regular intervals, but not more than 1 such examination in each period of 6 months, and shall furnish to the employee a true copy of the medical report when the presence of silicosis, pneumoconiosis or other dust disease is found. Provided, further, That employees who shall refuse to submit to such examinations when required shall not be entitled to the benefits provided by part 7 of this act."

Plaintiffs contend that Act No. 318, Pub. Acts 1945, is unconstitutional and void, and that employees of defendant foundry company should not be barred from the benefits provided them by part 7 of the workmen's compensation act because of their refusal to submit to the physical examination required by the 1945 act.

The trial judge held that plaintiff conference board is not a proper party within the provisions of the declaratory judgment statute (3 Comp. Laws 1929, § 13903 [Stat. Ann. § 27.501]), and dismissed the cause as to such board. The case, however, was decided on the merits since two of the defendant's employees were joined as parties plaintiff. The trial judge held that the 1945 act is limited solely to an amendment of section 4 of part 7 of Act No. 10, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937, and has no effect on any other section of the 1937 act.

It was further held that "no complete physical examination is provided for except in the case of industries in which there is danger of dust diseases, and that no complete physical examination is provided for in the amendment in question against any other kind of occupational disease," and that the act, so construed, is not unconstitutional. From a decree entered in conformity with such determination plaintiffs have appealed.

Since two of the defendant foundry company's employees have been joined as parties plaintiff, it is unnecessary to determine whether plaintiff conference board is a proper party plaintiff within the requirements of the declaratory judgment statute, *supra.* It might be observed, however, that, according to accepted labor practices in the Federal field, and in other State labor proceedings, employees may be represented and speak through their labor unions and associations, but we do not pass on that question at this time so far as Michigan is concerned. However, see *United States Heater Co.* v. *Iron Molder's Union of North America,* 129 Mich. 354.

The applicability of the declaratory judgment statute, *supra,* is not challenged and, therefore, on that question we express no opinion here. See, however, *City of Muskegon Heights* v. *Danigelis,* 253 Mich. 260 (73 A. L. R. 696), where the Court said:

"Under former practice a friendly suit would have been brought, entertained, and right in the matter adjudicated. Now, under the declaratory judgment act, there is presented issuable questions of fact and law of great public moment, and, if the act is to serve at all, it must be permitted to serve in this instance."

It is argued by appellants that the act in question creates "an unreasonable classification and by imposing more severe penalties upon employees in the

dust industries than other employees and because the requirement of a complete physical examination has no reasonable relation to the object sought to be obtained, the act is unconstitutional."

Appellants also contend that the terms of the act in question are vague, indefinite, and uncertain, and therefore incapable of enforcement.

It is apparent from plaintiffs' brief that the employees affected by the 1945 act fear that this legislation, though perhaps on its face beneficial to them and the industry, is actually and primarily for the benefit of those insurance companies who specialize in industrial risks; that the physical examinations imposed will result in the elimination from this field of labor those who have latent or potential physical defects, and thereby deprive them of their ability to earn, and, on the other hand, permit employers and their insurers to escape future liability under the workmen's compensation act.

This argument has no bearing upon the matter of constitutionality. *C. F. Smith Co.* v. *Fitzgerald,* 270 Mich. 659.

The wisdom of the legislation in question is a legislative responsibility with which courts may not interfere. *Straus* v. *Elless Co.,* 245 Mich. 558; *Gober* v. *Federal Life Ins. Co.,* 255 Mich. 20; *Little* v. *American State Bank of Dearborn,* 263 Mich. 645; and *Buehler* v. *University of Michigan,* 277 Mich. 648.

Plaintiffs claim that since the act is applicable only to workers exposed to dust, it constitutes an unreasonable and, therefore, an unconstitutional classification. By way of emphasis they point out that workers exposed to lead poisoning are not required by the act to undergo similar physical examinations, although they are subject to some of the same occupational hazards.

In answer to this argument we accept and adopt the reasoning of the California court in *Application of Fred J. Martin for a writ of Habeas Corpus,* 157 Cal. 51 (106 Pac. 235, 26 L. R. A. [N. S.] 242), as follows:

"It is argued by the appellant that the act is special because it does not include in its scope many occupations other than mining which are equally dangerous to the health of the persons engaged in them. Reference is made, for example, to marble cutters and marble drillers, diamond cutters, workers in furnaces and laundries, men employed in wine cellars, breweries and ice-houses, men in boiler works, matchmakers, cleaners of clothes, makers of white lead, of china and earthenware and many others.

"The argument is, apparently, that any law is special which does not include all of these occupations. This view is obviously unsound. Whether these other occupations present the same dangers to health as those involved in mining, et cetera, and whether, if they do, these dangers can best be met by restricting the hours of labor, are primarily questions for the legislature. The legislature has determined one or both of them in the negative by enacting this law. The selection of the businesses requiring regulation is confided to the legislative discretion, and this discretion is not subject to judicial review unless it clearly appears to have been exercised arbitrarily and without any show of good reason. It certainly cannot be justly said to be apparent that each or any of the trades instanced by counsel is, in its effect upon the health of workers, identical with the occupations covered by the act under discussion, nor that the most appropriate method of counteracting any injurious effects pertaining to any of them is necessarily the same as that found to be suitable for miners and men working in smelting and reduction works. In other words, the law is not rendered special by the mere fact that it does not cover every subject which the legislature might conceiv-

ably have included in it. It is enough that the subjects covered possess such intrinsic peculiarities as to justify the legislative determination that those subjects require special enactment."

See, also, *Miller* v. *Detroit Savings Bank*, 289 Mich. 494; *Michigan Telephone Tax Cases*, 185 Fed. 634; *Citizens Telephone Co. of Grand Rapids* v. *Fuller*, 229 U. S. 322 (33 Sup. Ct. 833, 57 L. Ed. 1206): *Kelley* v. *Judge of Recorder's Court of Detroit*, 239 Mich. 204 (53 A. L. R. 273); and *Mulloy* v. *Wayne County Board of Supervisors*, 246 Mich. 632.

Other phases of the appellants' argument are more troublesome. Are the statutory words "complete physical examination" so indefinite as to be incapable of enforcement?

Dr. Charles H. McIntyre, who for six years was an instructor in surgery at the University of Michigan Medical School, and since then a surgeon in private practice in Kalamazoo, testified at length with reference to the meaning of this phrase. On cross-examination he said:

"I cannot conceive the term 'complete physical examination' being used with respect to the determination of some particular ailment."

He insisted that such an examination includes an inquiry into family background and involves interrogation with reference to all bodily functions. He stated that an X-ray examination is necessary in order to determine the presence of silicosis.

In Volume 21 of the Indiana Law Journal, p. 661, July, 1946, may be found papers read at a national symposium which reviewed the basic principles in workmen's compensation. Among these papers is one by Dr. Norbet Enzer of Mt. Sinai Hospital at Milwaukee, on the specific subject of silicosis. According to Doctor Enzer the most important phase of a clinical examination is that of an X-ray of the

chest. Without such evidence the diagnosis of silicosis cannot be made during the lifetime of the patient. This examination requires the use of most highly skilled and trained experts in radiology. Functional tests such as "minute volume respiration," "vital capacity," "respiratory response to exercise," and others, are useful only when it is shown that other disorders in the body are absent.

This writer points out that despite the fact that the cause of the disorder is precise, the manifestations of the disease vary considerably and the X-ray findings must be correlated with industrial and medical history and other tests. In short, this authority concludes that a worthwhile examination for the purpose of obtaining an accurate result must be special and specific rather than general, and then conducted only by specialized experts in the particular field of pulmonary reactions to the inhalation of inorganic dust.

It is therefore doubtful whether a "complete physical examination" is the proper description of one that will disclose the presence of "silicosis, pneumoconiosis, or other dust disease." As stated by Doctor Enzer, silicosis is a complex disease. To understand it thoroughly a physician must observe it from its inception, until the last chapter has been disclosed on the autopsy table.

It cannot be said, in the light of the testimony in this record and the examination of authoritative data on the subject, that the desired end can be accomplished by a "complete physical examination." What is needed is apparently just the reverse, *i.e.*, a specific examination for the purpose of disclosing "pulmonary reactions to the inhalation of inorganic dust."

It is unnecessary to determine at this time whether the examination proposed in this statute is an invasion of the employee's right of privacy. It is,

however, not such an examination as is already required by the workmen's compensation law. That act now provides in part 2, § 19 thereof (2 Comp. Laws 1929, § 8435 [Stat. Ann. § 17.169]), as follows:

"After an employee has given notice of an injury, as provided by this act, and from time to time thereafter during the continuance of his disability, he shall, if so requested by the employer, or the insurance company carrying such risk, or the commissioner of insurance, as the case may be, submit himself to an examination by a physician or surgeon authorized to practice medicine under the laws of the State, furnished and paid for by the employer, or the insurance company carrying such risk, or the commissioner of insurance, as the case may be. The employee shall have the right to have a physician provided and paid for by himself present at the examination. If he refuses to submit himself for the examination, or in any way obstructs the same, his right to compensation shall be suspended, and his compensation during the period of suspension may be forfeited. Any physician who shall make or be present at any such examination may be required to testify under oath as to the results thereof."

This statutory requirement, enacted in 1912 (Act No. 10, Pub. Acts 1912 [1st Ex. Sess.]), has been accepted by employer and employee alike, and its application is well known to the profession. See, also, Act No. 18, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 14238–2, Stat. Ann. 1947 Cum. Supp. § 27.475 [1]).

The most difficult question is that which grows out of the penalty clause, which reads:

"Provided, further, That employees who shall refuse to submit to such examinations when required shall not be entitled to the benefits provided by part 7 of this act."

Thus stated, this statutory penalty, under certain circumstances, is wholly unrelated to the beneficent purpose of the act and would bar the employees involved from any compensation whether related to dust diseases or not.

We are mindful of the presumption of constitutionality and that we may not usurp the law-making functions of the legislature. The penalty, however, as stated in the act, might operate in perpetuity. Desirable as its end may be, the amendment contains provisions which are indefinite, uncertain, and unreasonable. Furthermore, the procedure with reference to physical examinations is not in accord with fundamental principles of "due process of law."

We refrain from repeating what we have recently said with respect to a comparable act (Act No. 10, pt. 7, § 6, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937 [Comp. Laws Supp. 1940, § 8485-6, Stat. Ann. 1947 Cum. Supp. § 17.255]), in *Dation* v. *Ford Motor Co.,* 314 Mich. 152 (19 N. C. C. A. [N. S.] 158).

We are, therefore, constrained to hold the amendment in question void and unconstitutional.

The decree below is vacated and one may be entered here in conformity with this opinion. A public question being involved, no costs will be allowed.

Sharpe, Boyles, Reid, North, Butzel, and Carr, JJ., concurred. Dethmers, J., did not sit.