PEOPLE v JAHNER
PEOPLE v JONES
PEOPLE v DUDGEON
PEOPLE v TIPSWORD

Docket Nos. 82867, 82868, 83123, 83124, 83431. Argued April 5, 1989
(Calendar Nos. 5-8). Decided September 27, 1989.

Monica Jahner was convicted by a jury in the Livingston Circuit
Court, Bert M. Hensick, J., of conspiracy to commit first-degree
murder and assault with intent to murder. She was sentenced
to life imprisonment for the conspiracy conviction. The Court of
Appeals, MAHER, P.J., and GILLIS and WAHLS, JJ., held that the
conspiracy conviction is nonparolable (Docket No. 100089). The
defendant appeals.

Ricky L. Jones was convicted by a jury in the Barry Circuit
Court, Hudson E. Deming, J., of two counts of conspiracy to
commit first-degree murder. The Court of Appeals, MAHER, P.J.,
and WAHLS and J. A. HATHAWAY, JJ., affirmed in an unpub-
lished opinion per curiam (Docket No. 68279). On remand,
MAHER, P.J., and GILLIS and WAHLS, JJ., held, in an opinion
per curiam, that conviction of conspiracy to commit first-degree
murder is nonparolable (Docket No. 100090). The defendant
appeals.

George Dudgeon and Jimmie R. Tipsword were convicted by a
jury in the Oakland Circuit Court, Robert L. Templin, J., of
conspiracy to commit first-degree murder. The Court of Ap-
peals, MAHER, P.J., and MACKENZIE and J. H. PIERCEY, JJ.,
affirmed in an unpublished opinion per curiam (Docket Nos. 78-
5522 through 78-5525). On remand, BEASLEY, P.J., and GILLIS
and GRIBBS, JJ., held that the defendants were eligible for
parole consideration (Docket Nos. 100087, 100088). The people
appeal.

In an opinion by Justice GRIFFIN, joined by Chief Justice
RILEY and Justices LEVIN, BRICKLEY, CAVANAGH, and ARCHER,
the Supreme Court held:

A person sentenced to life imprisonment for conspiracy to

REFERENCES

Am Jur 2d, Pardon and Parole §§ 73 et seq.

See the Index to Annotations under Parole, Probation, and Pardon.

commit first-degree murder is eligible for parole consideration. Because this decision clarifies existing law, it is to be applied retroactively.

1. The penalty for conspiracy is vicarious and depends upon the target offense penalty where the target offense is punishable by imprisonment for one year or more. First-degree murder is punishable by imprisonment for life, and persons convicted of it are not eligible for parole consideration. Whether defendants convicted of conspiracy to commit first-degree murder are eligible for parole cannot be answered by reference to the conspiracy statute alone, because that statute, by its terms, does not address the parole issue. Likewise, the first-degree murder statute which provides for mandatory life imprisonment is silent with respect to parole. First-degree murder is a nonparolable offense because of MCL 791.234(4); MSA 28.2304(4), the "lifer law," which expressly excludes persons convicted of first-degree murder from the jurisdiction of the Parole Board. It does not, however, similarly exclude defendants convicted of a different crime, conspiracy to commit first-degree murder, from the scope of its coverage.

2. Conspiracy is a crime that is separate and distinct from the substantive crime that is its object. While defendants in these cases were found guilty of an extremely heinous offense, it cannot be said that they were convicted of first-degree murder; accordingly, the parole prohibition does not apply. It is a fundamental rule of criminal construction that criminal statutes cannot be extended to cases not included within the clear and obvious import of their language. Doubt is to be resolved in favor of the accused. Similar considerations have given rise to the rule that ambiguity in punishment prescribed by a criminal statute is to be resolved in favor of lenity.

3. The Legislature has the exclusive power to designate the grade and prescribe the punishment of offenses; it is the duty of the courts to interpret a statute as it is found. While the conspiracy statute and the "lifer law" both address in general terms the punishment of criminal activity and should be read in pari materia, each addresses separate and distinct considerations. The conspiracy statute directs trial courts to impose penalties, and the statutory command is discharged at sentencing. By contrast, the "lifer law" is not directed at the sentencing court, but rather governs the power and authority of the Parole Board to grant parole under certain circumstances. "Penalty," as used in the conspiracy statute does not encompass the parole considerations set forth in the "lifer law." Thus, a person sentenced to life imprisonment for conspiracy to

commit first-degree murder is eligible for parole consideration, pursuant to MCL 791.234(4); MSA 28.2304(4).

Justice BOYLE, concurring, stated that a person sentenced to life imprisonment for conspiracy to commit first-degree murder is eligible for parole consideration pursuant to the "lifer law." Generally the "lifer law" confers Parole Board jurisdiction over prisoners who have served ten years of their sentence; however, it expressly excepts persons convicted of first-degree murder and major controlled substance offenses. Because persons convicted of conspiracy to commit first-degree murder are not expressly excepted from the operation of the "lifer law," it is reasonable to assume that the Legislature did not intend to preclude such persons from parole eligibility.

*Tipsword* and *Dudgeon,* affirmed.

*Jones* and *Jahner,* reversed.

167 Mich App 424; 423 NW2d 590 (1988) reversed.

CONSPIRACY — FIRST-DEGREE MURDER — PAROLE.

A person sentenced to life imprisonment for conspiracy to commit first-degree murder is eligible for parole consideration (MCL 750.157a; MSA 28.354[1], MCL 750.316; MSA 28.548, MCL 791.234[4]; MSA 28.2304[4]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David L. Morse,* Prosecuting Attorney, and *Daniel J. Garber, Jr.,* Chief Assistant Prosecutor, for the people in *Jahner.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Judy H. Hughes,* Prosecuting Attorney, and *William E. Molner,* Assistant Attorney General, for the people in *Jones.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert C. Williams,* Chief, Appellate Division, *L. Brooks Patterson,* Prosecuting Attorney, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people in *Dudgeon* and *Tipsword.*

State Appellate Defender (by *Fred E. Bell* and *Susan Meinberg Thomas*) for defendant Jahner.

State Appellate Defender (by *F. Michael Schuck*) for defendant Jones.

*James Sterling Lawrence* for defendants Dudgeon and Tipsword.

GRIFFIN, J. In each of the four cases before us, the defendant was convicted of conspiracy to commit first-degree murder and sentenced to life imprisonment, pursuant to MCL 750.316; MSA 28.548. We have consolidated these cases on appeal to decide the limited issue whether a person sentenced to life imprisonment for conspiracy to commit first-degree murder is eligible for parole consideration under MCL 791.234(4); MSA 28.2304(4) and the proper retroactive effect of such a decision. We conclude that the existing statutory scheme governing conspiracy and its punishment does not preclude parole consideration for defendants convicted of conspiracy to commit first-degree murder. Our decision has retroactive application.

I

Defendants Tipsword and Dudgeon were convicted by a jury in 1975 of conspiracy to commit first-degree murder and sentenced to life imprisonment. The defendants and two others conspired, for pay, to kill an Oak Park resident because of a "family problem." The planned murder was foiled when, on the night in question, the mother of the intended victim refused to answer a suspicious late night knock on the door of her residence and instead called the police. Defendants fled the scene and were apprehended shortly thereafter. In a consolidated appeal, the Court of Appeals affirmed defendants' convictions and, upon remand ordered by this Court for the purpose of deciding the

present issue, held that defendants were eligible for parole consideration.

Defendant Jones was convicted of two counts of conspiracy to commit first-degree murder and was sentenced to life imprisonment for conspiring to kill two business partners. The plan was thwarted when the assassin selected by the defendant turned out to be a state trooper. The Court of Appeals affirmed defendant's convictions and subsequently held upon remand that defendant's sentence was nonparolable. 167 Mich App 424; 423 NW2d 590 (1988).

Defendant Jahner was convicted by a jury of conspiracy to commit first-degree murder and assault with intent to murder. She was sentenced to life imprisonment for the conspiracy conviction and ten to twenty years imprisonment for the assault. Defendant conspired with another person to kill her stepmother. The victim was injured in the murder attempt, but recovered and testified at trial. Defendant's conviction of conspiracy to commit first-degree murder was ultimately held by order of the Court of Appeals to be a nonparolable offense.

Upon application for leave to appeal in this Court, these four cases were consolidated for consideration of the parole eligibility issue.

II

The present question involves the interplay of three statutes. The conspiracy statute was enacted as 1966 PA 296. It reads, in relevant part:

Any person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy punishable as provided herein:

(a) Except as provided in paragraphs (b), (c) and
(d) if commission of the offense prohibited by law
is punishable by imprisonment for 1 year or more,
the person convicted under this section shall be
punished by a penalty equal to that which could
be imposed if he had been convicted of committing
the crime he conspired to commit and in the
discretion of the court an additional penalty of a
fine of $10,000.00 may be imposed. [MCL 750.157a;
MSA 28.354(1).]

Thus, the penalty for conspiracy is vicarious and
depends upon the target offense penalty where the
target offense is punishable by imprisonment for
one year or more. The defendants in the instant
cases were charged with and convicted of conspir-
acy to commit first-degree murder. MCL 750.316;
MSA 28.548, the first-degree murder statute, reads:

Murder which is perpetrated by means of poi-
son, lying in wait, or other wilful, deliberate, and
premeditated killing, or which is committed in the
perpetration, or attempt to perpetrate arson, crim-
inal sexual conduct in the first or third degree,
robbery, breaking and entering of a dwelling, lar-
ceny of any kind, extortion, or kidnapping, is
murder of the first degree, and shall be punished
by imprisonment for life.

Finally, the so-called "lifer law" provides that
those convicted of the substantive crime of first-
degree murder are not eligible for parole consider-
ation:

A prisoner under sentence for life or for a term
of years, *other than prisoners sentenced for life for
murder in the first degree* and prisoners sentenced
for life or for a minimum term of imprisonment
for a major controlled substance offense, who has
served 10 calendar years of the sentence is subject
to the jurisdiction of the parole board and may be

released on parole by the parole board . . . . [MCL 791.234(4); MSA 28.2304(4).[1] Emphasis added.]

Although a statute may appear to be unambiguous on its face, "it can be rendered ambiguous by its interaction with and its relation to other statutes." 2A Sands, Sutherland Statutory Construction, § 46.04, pp 86-87. Such is the case here. The question of parole eligibility for defendants convicted of conspiracy to commit first-degree murder cannot be answered by reference to the conspiracy statute alone, since that statute, by its terms, does not address the parole issue. Similarly, although the first-degree murder statute provides for mandatory life imprisonment, it too is silent with respect to parole implications. What makes first-degree murder a nonparolable offense is the "lifer law," which specifically excludes persons convicted of first-degree murder from the jurisdiction of the Parole Board after serving ten calendar years of the sentence. However, the "lifer law" does not similarly exclude defendants convicted of the crime of conspiracy to commit first-degree murder from the scope of its coverage. This is the heart of the present controversy over which the Court of Appeals panels have split evenly in the present cases. Should the express exclusion of first-degree murder from parole eligibility be extended by implication to the crime of conspiracy to commit

_____

[1] A fourth statute which requires mention is MCL 791.233(3); MSA 28.2303(3), as amended by 1978 PA 81. That statute, otherwise known as Proposal B, prohibits parole in certain cases until the minimum sentence is actually served. Proposal B was interpreted, until 1984, to preclude parole consideration for persons serving life sentences because the minimum sentence of a life sentence is life. However, this Court subsequently held that Proposal B applies only to indeterminate sentences, not fixed or life sentences. *People v Johnson,* 421 Mich 494, 498; 364 NW2d 654 (1984). Thus, as this Court stated in *People v Fernandez,* 427 Mich 321, 333; 398 NW2d 311 (1986), "there is no apparent restriction arising from Proposal B on application of the 'lifer law' to a life sentence imposed for conspiracy to commit first-degree murder."

first-degree murder?[2] We are constrained to respond in the negative.

### III

In each of the cases before us, the crime which was the object of the conspiracy did not come to fruition. None of the intended victims was killed. That the intended murders in these cases never occurred does not detract from the seriousness of the offenses, see *People v Fernandez,* 427 Mich 321, 336; 398 NW2d 311 (1986); however, it does

---

[2] That there might be a problem of statutory interpretation regarding parole eligibility first became apparent to this Court in *People v Fernandez,* n 1 *supra,* pp 330-331, 333, where we held that a mandatory life sentence is required for a conviction of conspiracy to commit first-degree murder. We remanded that case to the Court of Appeals for consideration of the parole eligibility issue, explaining:

> While the possibility of parole was an underlying concern in the Court of Appeals and in the briefs submitted to this Court, the Court below and the parties' briefs assumed that once a life sentence was imposed by the conjunction of §§ 157a and 316, there was no possibility of parole. At oral argument, the idea first arose that such a life sentence could qualify under MCL 791.234(4); MSA 28.2304(4), the "lifer law," for parole consideration after ten years.

> \* \* \*

> While MCL 791.234(4); MSA 28.2304(4) specifically excludes those sentenced for murder in the first-degree from the provisions of the "lifer law," there is no such exclusion for those sentenced to life for conspiracy to commit first-degree murder under MCL 750.157a; MSA 28.354(1). Thus, as the prosecutor observed at oral argument, there is no apparent reason in the "lifer law" itself that would preclude the possibility of parole in Mr. Fernandez' case.

> \* \* \*

> Because this issue was not briefed by the parties and there has been no opportunity for amici curiae like the Parole Board to file briefs, we remand this case to the Court of Appeals for briefing and decision on this issue.

On remand, the Court of Appeals concluded that there was parole eligibility. 164 Mich App 485; 417 NW2d 540 (1987). No further appeal was pursued in *Fernandez* subsequent to the Court of Appeals decision on remand.

underscore an important distinction between the crime of conspiracy to commit first-degree murder and the crime of first-degree murder itself:

> It is a settled principle of black-letter law that conspiracy is a crime that is separate and distinct from the substantive crime that is its object. La-Fave & Scott, Criminal Law, § 62, p 494; *People v Tinskey,* 394 Mich 108; 228 NW2d 782 (1975); *People v Chambers,* 279 Mich 73; 271 NW 556 (1937). The guilt or innocence of a conspirator does not depend upon the accomplishment of the goals of the conspiracy. [*People v Carter,* 415 Mich 558, 569; 330 NW2d 314 (1982).]

While defendants in these cases were found guilty of an extremely heinous offense, it cannot be said that they were convicted of first-degree murder. Accordingly, the parole prohibition in the "lifer law" which expressly applies to first-degree murder does not apply to the separate and distinct crime of conspiracy to commit that offense.

Criminal statutes are to be strictly construed:

> It is a fundamental rule of construction of criminal statutes that they cannot be extended to cases not included within the clear and obvious import of their language. And if there is doubt as to whether the act charged is embraced in the prohibition, that doubt is to be resolved in favor of the defendant. In other words, nothing is to be added by intendment. [*People v Ellis,* 204 Mich 157, 161; 169 NW 930 (1918).]

This rule is most commonly applied in defining those actions that come within the scope of a statutory prohibition. As explained in *People v Willie Johnson,* 75 Mich App 221, 225; 255 NW2d 207 (1977), aff'd 406 Mich 320; 279 NW2d 534 (1979):

The principle requires that doubtful conduct be found not criminal. In large part, the principle in those cases is based on the idea of notice, but this rule of strict construction of penal or criminal statutes also reflects the idea that it is the job of the Legislature to define criminal offenses and punishment. Restraint by the courts in interpreting criminal statutes works to avoid judicial infringement of that legislative function.

\* \* \*

Strict construction also serves to guard against the dangers of arbitrary and discriminatory application of otherwise vague legislative pronouncements. *People v Howell,* 396 Mich 16, 20, n 4; 238 NW2d 148 (1976).

Similar considerations have given rise to the "rule of lenity." In *People v Bergevin,* 406 Mich 307, 312; 279 NW2d 528 (1979), this Court quoted from *Bell v United States,* 349 US 81, 83; 75 S Ct 620; 99 L Ed 905 (1955):

"When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this is not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or anti-social conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment."

See also *People v Gilbert,* 414 Mich 191, 211; 324 NW2d 834 (1982); *People v Dempster,* 396 Mich 700, 715; 242 NW2d 381 (1976); *People v Willie Johnson, supra,* pp 224-225.

The rule of lenity operates in favor of an accused, mitigating punishment when punishment is unclear. Thus, in the instant cases, where the

defendants are convicted of an offense for which the penalty provisions are ambiguous, particularly where the potential penalty is the harshest possible under state law, we are hesitant to add by inference another exception to the "lifer law."[3] The practical effect would be to eliminate Parole Board discretion on this issue. Under the circumstances, we are unwilling to set into play these ramifications without further direction from the Legislature. The Legislature, not this Court, has the exclusive power to designate the grade and prescribe the punishment of offenses. *Attorney General v Recorder's Court Judge,* 341 Mich 461, 474-475; 67 NW2d 708 (1954); *People v Causley,* 299 Mich 340, 348; 300 NW 111 (1941). Furthermore, it is the duty of this Court to interpret a statute as we find it:

> The wisdom of the provision in question in the form in which it was enacted is a matter of legislative responsibility with which courts may not interfere. *Michigan & Vicinity Foundry Workers*

---

[3] Another pertinent rule of statutory construction provides that "inclusion by specific mention excludes what is not mentioned." *Van Sweden v Van Sweden,* 250 Mich 238, 241; 230 NW 191 (1930). Statutory exceptions are to be accorded limited, rather than expansive construction:

> [I]t is not the province of this court to make an exception where the legislature has made none. The rule of construction is that the exception, if any, shall appear in the act. [*Arends v Grand Rapids R Co,* 172 Mich 448, 450-451; 138 NW 195 (1912). See also *Northville Coach Line, Inc v Detroit,* 379 Mich 317, 329; 150 NW2d 772 (1967) (plurality opinion); *Rzepka v Farms Estates, Inc,* 83 Mich App 702, 707; 269 NW2d 270 (1978).]

A related, consistent principle of statutory construction is that the express mention in a statute of one thing implies the exclusion of other similar things (expressio unius est exclusio alterius), *Stowers v Wolodzko,* 386 Mich 119, 133; 191 NW2d 355 (1971); *Sebewaing Ind v Village of Sebewaing,* 337 Mich 530, 545-546; 60 NW2d 444 (1953); *Ellis v Wakefield Twp School Dist,* 79 Mich App 347, 350; 261 NW2d 320 (1977).

*Union v Enterprise Foundry Co,* 321 Mich 265 [32
NW2d 515 (1948)]. As tersely stated by Chief Jus-
tice BUTZEL in *Roosevelt Oil Co v Secretary of
State,* 339 Mich 679, 694 [64 NW2d 582 (1954)], "It
is the function of the court to fairly interpret a
statute as it then exists; it is not the function of
the court to legislate." [*Melia v Employment Secu-
rity Comm,* 346 Mich 544, 561-562; 78 NW2d 273
(1956).]

Resolution of this issue in favor of parole is
reinforced by another significant consideration.[4]
Since enactment of the conspiracy statute in 1976,
the "lifer law" has been amended twice, in 1978
and 1982. Until 1978, only first-degree murderers
were expressly excepted from the "lifer law." In
1978, in the course of a comprehensive revision of
the controlled substances statute, persons con-
victed of a major controlled substance offense, as
well as those convicted of conspiracy to commit
such offenses, were expressly excepted from the
"lifer law" and thus were deprived of its benefits.
See MCL 791.233b(1); MSA 28.2303(2)(1). The "lifer
law" has not been similarly amended to expressly
except from parole eligibility those convicted of
conspiracy to commit first-degree murder.

The prosecution in the instant cases places un-
due emphasis on the term "penalty" as it is used
in the conspiracy statute. The Court of Appeals in
*Jones (On Remand), supra,* p 427, posited that

---

[4] Unfortunately, despite our invitation in *Fernandez, supra,* p 333,
to the Parole Board to file a brief on this issue as amicus curiae, little
information has been generated regarding the actual practice of the
Parole Board and its treatment of defendants sentenced to life for a
conspiracy to commit first-degree murder. There is no written Parole
Board policy. Thus, we cannot benefit one way or the other from the
interpretative aid that the " 'construction placed upon statutory
provisions by any particular department of government for a long
period of time . . . should be given considerable weight.' " *Melia v
Employment Security Comm, supra,* p 565. Defendant Jahner's record
suggests that the Parole Board has been routinely reviewing her case
since 1984 as a "lifer law" case.

[w]hile one may argue that parole eligibility is not appurtenant to a *sentence* imposed for a particular conviction, the same cannot be said for the *penalty* imposed. The lack of parole eligibility is undoubtedly a "penalty" imposed upon a person *sentenced* to life imprisonment for first-degree murder. Hence, the conspiracy statute mandates a like penalty for a person sentenced to life imprisonment for a conspiracy to commit first-degree murder.

This approach overlooks the independent nature of the conspiracy statute and the "lifer law" vis-à-vis one another. While the conspiracy statute and the "lifer law" both address in general terms the punishment of criminal activity and therefore should be read in pari materia, the two statutes address separate and distinct considerations. The conspiracy statute is directed to the trial court and requires that it impose a particular "penalty" for the offense. However, the statutory command is discharged at the time of sentencing. By contrast, the "lifer law" is not directed at the sentencing court, but rather governs the power and authority of the Parole Board to grant parole under certain circumstances. Given the autonomy granted to the Parole Board and the separate function which it serves, we do not believe that the term "penalty" as it is used in the conspiracy statute encompasses the parole considerations set forth in the "lifer law."

Our prior treatment of parole as an element of the sentencing process supports this conclusion. In *Guilty Plea Cases,* 395 Mich 96, 118; 235 NW2d 132 (1975), this Court ruled that the trial judge need not inform the defendant of all sentence consequences—only the maximum sentence for the crime to which he was pleading guilty. In subsequent cases, the Michigan courts have held that a

defendant's eligibility for parole, or good time, or any other factor that affects his actual release date, is not a sentence consequence of which a defendant need be advised when pleading guilty. See, e.g., *People v Johnson,* 413 Mich 487; 320 NW2d 876 (1982); *People v Price,* 124 Mich App 717, 721-722; 335 NW2d 134 (1983); *People v King,* 111 Mich App 363; 314 NW2d 622 (1981). Thus, it would be inconsistent in the present context to find that the term "penalty" as it is used in the conspiracy statute extends to parole considerations.

The prosecution also points to the Legislature's presumed awareness of existing law when it enacts new legislation, *People v Timothy Smith,* 423 Mich 427, 441-442; 378 NW2d 384 (1985), as another basis for precluding parole eligibility. As the *Jones* Court theorized in its opinion on remand, the Legislature is presumed to have known that first-degree murder was nonparolable at the time it proclaimed in the conspiracy statute that one convicted of conspiracy is to receive a penalty equal to that which could be imposed for the substantive offense. *Jones, supra,* pp 426-427. See also *People v Fernandez (On Remand),* 164 Mich App 485, 489; 417 NW2d 540 (1987) (GILLIS, J., dissenting).

However, this presumption is contradicted by the fact that until relatively recently, there was a legitimate question—and difference of judicial opinion—on the more fundamental issue whether a conspiracy to commit first-degree murder conviction even required a mandatory life sentence pursuant to the language of the first-degree murder statute. See *People v Fernandez, supra.*

Moreover, the rules of statutory construction do not sustain the presumption of legislative knowledge under these particular circumstances:

The rule, in pari materia, does not permit the use of a previous statute to control by way of former policy the plain language of a subsequent statute; much less to add a condition or restriction thereto found in the earlier statute and left out of the later one. The contention made, if allowed, would go beyond the construction of the statute, and engraft upon its provisions a restriction which the legislature might have added but left out. [*Voorhies v Recorder's Court Judge,* 220 Mich 155, 157-158; 189 NW 1006 (1922). See also *People ex rel Pellow v Byrne,* 272 Mich 284, 288; 261 NW 326 (1935); *Reichert v Peoples State Bank,* 265 Mich 668, 672; 252 NW 484 (1934).]

We cannot assume that the Legislature misrepresented its intent when it limited exceptions to the "lifer law" to those offenses listed in the exceptions clause of MCL 791.234(4); MSA 28.2304(4).

We therefore conclude that a person sentenced to life imprisonment for conspiracy to commit first-degree murder is eligible for parole consideration, pursuant to MCL 791.234(4); MSA 28.2304(4).

This decision constitutes a clarification of existing law and, as such, is entitled to retroactive application. *People v Kamin,* 405 Mich 482; 275 NW2d 777 (1979).

IV

Accordingly, in *People v Tipsword* and *People v Dudgeon,* we affirm the decision of the Court of Appeals.

In *People v Jones* and *People v Jahner,* we reverse the decisions of the Court of Appeals.

RILEY, C.J., and LEVIN, BRICKLEY, CAVANAGH, and ARCHER, JJ., concurred with GRIFFIN, J.

BOYLE, J. I concur in the majority's holding that a person sentenced to life imprisonment for conspiracy to commit first-degree murder, MCL 750.157a, 750.316; MSA 28.354(1), 28.548, is eligible for parole consideration pursuant to MCL 791.234(4); MSA 28.2304(4). I would, however, base my conclusion on the narrow ground that the three statutes in question evidence no legislative intent to exclude from Parole Board jurisdiction a person convicted of conspiracy to commit first-degree murder.

All four defendants were convicted of conspiracy to commit first-degree murder. The conspiracy statute provides in pertinent part:

[T]he person convicted under this section shall be punished by a penalty equal to that which could be imposed if he had been convicted of committing the crime he conspired to commit and in the discretion of the court an additional penalty of a fine of $10,000.00 may be imposed. [MCL 750.157a(a); MSA 28.354(1)(a).]

The punishment for first-degree murder is set forth in the statute describing that offense:

Murder which is perpetrated by means of poison, lying in wait, or other wilful, deliberate, and premeditated killing, or which is committed in the perpetration, or attempt to perpetrate arson, criminal sexual conduct in the first or third degree, robbery, breaking and entering of a dwelling, larceny of any kind, extortion, or kidnapping, is murder of the first degree, and shall be punished by imprisonment for life. [MCL 750.316; MSA 28.548.]

Finally, the "lifer law" expressly precludes a

person under sentence for first-degree murder from parole consideration:

> A prisoner under sentence for life or for a term of years, other than prisoners sentenced for life for murder in the first degree and prisoners sentenced for life or for a minimum term of imprisonment for a major controlled substance offense, who has served 10 calendar years of the sentence is subject to the jurisdiction of the parole board and may be released on parole by the parole board . . . . [MCL 791.234(4); MSA 28.2304(4).]

The "lifer law" on its face must be interpreted to bring within Parole Board jurisdiction persons convicted of conspiracy to commit first-degree murder. The enumeration of exclusions from the operation of the statute indicates that the statute should apply to all cases not specifically excluded. 2A Sands, Sutherland Statutory Construction (4th ed), § 47.23, p 194. *Van Sweden v Van Sweden,* 250 Mich 238, 241; 230 NW 191 (1930); *Michigan Wolverine Student Co-operative, Inc v Goodyear,* 314 Mich 590; 22 NW2d 884 (1946). The "lifer law" generally confers Parole Board jurisdiction over prisoners who have served ten years of their sentence, expressly excepting persons convicted of first-degree murder and major controlled substance offenses. MCL 791.234(4); MSA 28.2304(4). Because persons convicted of conspiracy to commit first-degree murder are not expressly excepted from the operation of the "lifer law," it is reasonable to assume that the Legislature did not intend to preclude such persons from parole eligibility.

Even when a statute appears unambiguous on its face, it may be rendered ambiguous by its interaction with and relation to other statutes. 2A Sands, Sutherland Statutory Construction (4th ed), § 46.04, pp 86-87. Taken together, the statutes

considered in this case do not plainly reveal whether the Legislature intended to foreclose parole eligibility for those convicted of conspiracy to commit first-degree murder. The ambiguity revolves around the meaning of the word "penalty" in the conspiracy statute. The person convicted of conspiracy to commit first-degree murder is to be punished by the same "penalty" applied to one convicted for first-degree murder. The question is whether the "penalty" for conspiracy to commit first-degree murder should be construed as that described in the first-degree murder statute—life imprisonment—or whether it encompasses the sentence of life imprisonment and also the exclusion from parole eligibility contained in MCL 791.234(4); MSA 28.2304(4).

I believe that the more narrow interpretation accords with the structure and purpose of the statutes. The statutes defining conspiracy and first-degree murder, both contained in the Penal Code, address the punishment for those offenses. The "lifer law" is part of the Corrections Code[1] and addresses the Parole Board, which may grant or

---

[1] The Corrections Code was enacted in 1953 PA 232, which was entitled:

> An act to revise, consolidate and codify the laws relating to probationers and probation officers as herein defined, to pardons, reprieves, commutations and paroles . . . to create a state department of corrections, and to prescribe its powers and duties . . . .

The original version of the "lifer law" was contained in § 34 of the act:

> Any convict who now is, or hereafter may be imprisoned in any 1 of the prisons or reformatories of this state under sentence for life or for any term of years, other than those so sentenced for life for murder in the first degree, and who shall have served 10 calendar years of such sentence, shall be subject to the authority and jurisdiction of the parole board and may be released on parole in the discretion of the parole board . . . .

deny clemency. The independent nature of sentencing and parole stems from the fact that these powers flow from different branches of government.[2] In Michigan, the Legislature has created a Department of Corrections[3] which is given exclusive jurisdiction over paroles, MCL 16.375, 791.204; MSA 3.29(275), 28.2274, although parole will not be granted if the sentencing judge or the judge's successor files written objection to the granting of parole pursuant to MCL 791.234(4)(b); MSA 28.2304(4)(b).

Consistent with this division of functions we held in *Lane v Dep't of Corrections, Parole Bd,* 383 Mich 50, 61; 173 NW2d 209 (1970), that while the trial court has discretion to determine minimum sentences, the Parole Board, within the statutes, possesses the same discretion to determine the length of parole. We further held in *Guilty Plea Cases,* 395 Mich 96, 118; 235 NW2d 132 (1975), cert den 429 US 1108 (1977), that a trial judge need not inform a defendant of all sentencing consequences, but only of the maximum and any mandatory minimum sentence. I agree with the majority that

Amendments to the "lifer law" were enacted in 1955 PA 107, 1957 PA 192, 1958 PA 210, 1978 PA 81, and 1982 PA 314. The title to each amendment cites the purpose of 1953 PA 232 as stated in its original title.

[2]   Although it is within the inherent power of the judiciary to impose sentences in criminal cases within the limits established by legislative act, the matter of parole following the imposition of sentence is not a judicial function but is purely a legislative one. In other words, any power to grant paroles is not inherent in courts, but is dependent upon statute. [59 Am Jur 2d, Pardon and Parole, § 78, pp 67-68.]

[3] The department is headed by a commission whose members are appointed by the Governor, with the advice and consent of the Senate. MCL 16.378; MSA 3.29(278). Members of the commission may be removed by the Governor with cause. MCL 791.201; MSA 28.2271. Thus, the Department of Corrections operates under the control of the Executive Branch. See *Collins v Director, Dep't of Corrections,* 153 Mich App 477, 481; 395 NW2d 77 (1986), lv den 428 Mich 868 (1987), cert den 483 US 1026 (1987).

"it would be inconsistent in the present context to find that the term 'penalty' as it is used in the conspiracy statute extends to parole considerations." (*Ante,* p 503).

The prosecution in *Jones* urges a broader interpretation of the word "penalty" as used in the conspiracy statute, citing *Burrows v Delta Transportation Co,* 106 Mich 582; 64 NW 501 (1895). In *Burrows,* this Court interpreted a statute which required fire screens over the smokestacks of wood-fueled vessels. *Id.,* p 593. The statute provided that violation of its terms was a misdemeanor punishable by fine or imprisonment or both. *Id.,* pp 593-594. The question was whether the word "penalty" in the title of the act fairly apprised the public that damages were recoverable under the act. *Id.,* p 601. The Court answered in the affirmative, quoting from *Grover v Huckins,* 26 Mich 476, 482 (1873):

> "The term 'penalty' is used very loosely in statutes in some cases, and might without much strain of its ordinary meaning be held to embrace all the consequences visited by law upon the heads of those who violate police regulations." [106 Mich 602.]

The rule quoted in *Burrows* is *dicta* in *Grover v Huckins, supra.* Moreover, *Burrows* did not involve any question concerning parole. It would be unwarranted to conclude from the general language in *Burrows* that the word "penalty" as used in the conspiracy statute encompasses parole considerations.

Absent evidence to the contrary, it would be error to assume that the Legislature intended to treat persons convicted of conspiracy to commit first-degree murder the same as persons convicted of first-degree murder with respect to parole. In

enacting the conspiracy statute, the Legislature deemed conspiracy to commit a given offense sufficiently serious to warrant the punishment prescribed for the target offense. *People v Fernandez,* 427 Mich 321, 337; 398 NW2d 311 (1986). But clemency is a separate matter in which there might be reason to treat conspiracy differently from first-degree murder. Thus, we might hypothesize a case in which two persons form an agreement to commit murder, but then retreat from the plan in moral repugnance. The crime of conspiracy is complete "upon formation of the agreement," *People v Carter,* 415 Mich 558, 568; 330 NW2d 314 (1982), and it has been held that a withdrawal after this point is ineffectual. *People v Juarez,* 158 Mich App 66, 73; 404 NW2d 222 (1987).[4] Although the hypothetical individuals are guilty of conspiracy to commit first-degree murder and must receive a life sentence, *Fernandez, supra,* p 343, it seems unlikely that the Legislature intended a penalty of life imprisonment with no possibility of parole.

---

[4] This opinion does not purport to pass on the rule stated in *Juarez, supra.*