*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BENJAMIN ROY DALY,

        Defendant-Appellant.

UNPUBLISHED
November 19, 2020

No. 347213
Saginaw Circuit Court
LC No. 18-045126-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TROY LEE-JABBAR MCCLAIN, JR.,

        Defendant-Appellant.

No. 348372
Saginaw Circuit Court
LC No. 18-045125-FC

Before: BOONSTRA, PJ., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

In Docket No. 347213, defendant, Benjamin Roy Daly, appeals by right his jury-trial convictions of first-degree murder, MCL 750.316(1)(a), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). The trial court sentenced Daly to serve life imprisonment without the possibility of parole (LWOP) for his murder conviction and a consecutive term of two years' imprisonment for his felony-firearm conviction. In Docket No. 348372, defendant, Troy Lee-Jabbar McClain, Jr., appeals by right his jury-trial convictions of first-degree murder, MCL 750.316(1)(a), conspiracy to commit first-degree murder, MCL 750.316(1)(a) and MCL 750.157a(a), felon in possession of a firearm (felon-in-possession), MCL 750.224f, and three counts of second-offense felony-firearm, MCL 750.227b(1). The court sentenced McClain as a fourth-offense habitual offender, MCL 769.12, to serve LWOP for his first-degree murder and conspiracy to commit murder convictions, 15 to 30 years' imprisonment

-1-

for his felon-in-possession conviction, and three terms of five years' imprisonment for his three felony-firearm convictions to be served concurrently with each other and consecutively to the other sentences. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of the killing of Willie Dawson by Alexander Jones III at a food market. Dawson and McClain were "beefing" after Dawson purportedly had an affair with McClain's wife. On the night of the murder, Dawson was at a food market. Evidence admitted at trial established that, while Dawson was at the food market, Daly called McClain to inform McClain that Dawson was there. McClain then got into a truck with Jones, handed Jones a gun, and instructed Jones to shoot Dawson. Daly waited at the market until McClain and Jones arrived. Once they arrived, Jones short and killed Dawson. When Jones returned to McClain's truck, McClain purportedly noted that Dawson "better be dead." Daly subsequently took Jones to several houses until they found Jones a place to hide.

Following a jury trial at which Jones testified against defendants, defendants were convicted as outlined above. Defendant Daly now contends that his convictions and sentences should be vacated on the basis of erroneous hearsay admitted at trial, insufficient evidence, ineffective assistance of counsel, and prosecutorial misconduct. Defendant McClain contends that his convictions and sentences should be vacated on the basis of prosecutorial misconduct, and improper testimony concerning the credibility of a witness. McClain further contends that he is entitled to resentencing because the trial court failed to assess the minimum sentencing guidelines range for each of his convictions, and because conspiracy to commit first-degree murder is a parolable offense. We affirm.

## II. HEARSAY

We first address Daly's argument that the trial court improperly admitted hearsay testimony from Jones concerning the substance of what Daly said to McClain over the phone. We conclude that trial court properly admitted this statement as the statement of a coconspirator during a conspiracy.

This Court reviews challenges to the trial court's evidentiary rulings for an abuse of discretion. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). The trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or when it makes an error of law. *Id*. at 722-723. This Court reviews de novo preliminary questions of law concerning the admission of evidence, such as the trial court's application of the rules of evidence. *Id*. at 723.

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is generally inadmissible, unless it is subject to a hearsay exception. MRE 802; *Duncan*, 494 Mich at 724. "[A] statement made by a coconspirator of a party during the course and in furtherance of the conspiracy on independent proof of the conspiracy" is not considered hearsay. MRE 801(d)(2)(E). To admit a statement under MRE 801(d)(2)(E), the proponent must show (1) a preponderance of evidence that a conspiracy existed, independent of the hearsay statement, (2)

the statement was made during the course of the conspiracy, and (3) the statement furthered the conspiracy. *People v Martin*, 271 Mich App 280, 316-317; 721 NW2d 815 (2006). "It is not necessary to offer direct proof of the conspiracy." *Id*. at 317. Circumstantial evidence and the conduct of the parties may establish that a conspiracy existed, and whether a defendant is ultimately charged with or acquitted of conspiracy is not determinative of the evidentiary issue. *Id*. at 317, 319.

In this case, Jones testified that McClain told Jones that he received a call from Daly informing him that Dawson was at the food market. McClain purportedly got angry, threw his phone, and told Jones to "come on." Jones testified that he got into McClain's truck, where McClain gave Jones a gun and told him to shoot Dawson. The trial court ruled that these statements were admissible to show their effect on the listener, that the statements could be considered party admissions under MRE 801(d), and that the statements were "part of the conspiracy, potentially."

Before Jones testified, the court opined that both McClain and Daly had been charged with conspiracy,[1] and that the information available to the court at that time suggested that a conspiracy did, in fact, exist. The evidence included that a food market attendant had testified that Daly was speaking on the phone while inside the market, and that surveillance video from the night confirms the same. A detective testified that Daly's phone had, indeed, called McClain's phone, and Daly himself stated during an interview that he had called McClain. The circumstantial evidence, as well as Daly's own statements establish that it was more probable than not that a conspiracy existed and that Daly's act of calling McClain furthered that conspiracy.

With all of the above in mind, we conclude that the trial court's decision to admit Jones's testimony as nonhearsay evidence of a conspiracy did not fall outside the range of reasonable and principled outcomes because independent evidence established the existence of the conspiracy. Because the evidence was admissible under this ground, we need not consider Daly's argument that this testimony was not also admissible in order to show its effects on the listener.

## III. SUFFICIENCY OF THE EVIDENCE

Daly next argues that there was insufficient evidence to support his conviction of first-degree murder under an aiding and abetting theory because he was merely present for the event, and did not know that Jones intended to kill the victim. We disagree.

We review challenges to the sufficiency of the evidence de novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). In conducting our review, we construe the evidence in a light most favorable to the prosecution and consider whether there was sufficient evidence for a rational trier of fact to find all of the elements of the crime were satisfied beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999).

---

[1] Daly was charged with conspiracy to commit first-degree murder, but ultimately was found guilty of premeditated, first-degree murder itself on an aiding and abetting theory.

First-degree murder is the intentional killing of a human with premeditation and deliberation. *People v Bass*, 317 Mich App 241, 265-266; 893 NW2d 140 (2016). Notably, circumstantial evidence and reasonable inferences can sufficiently prove a defendant's state of mind, knowledge, or intent. *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). Additionally, because it is difficult to prove a person's state of mind, minimal circumstantial evidence sufficiently establishes a person's intent to kill. *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008).

A person who helps another commit a crime is just as guilty of the crime as the person who directly committed it:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense. [MCL 767.39.]

However, a defendant's mere presence at the crime scene is not enough to support a conviction under an aiding and abetting theory. *People v Wolfe*, 440 Mich 508, 535-536; 489 NW2d 748 (1992) (BOYLE, J., concurring). "[T]o convict a defendant of aiding and abetting a crime, a prosecutor must establish that (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement." *People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004) (quotation marks, citation, and brackets omitted).

We conclude that there was sufficient evidence that Daly was more than merely present when Dawson killed.[2] As noted, Jones testified that Daly called McClain and informed McClain of Dawson's location. Video evidence corroborates this idea, wherein Daly can be seen behaving suspiciously inside the food market as though he were waiting for someone to arrive. Notably, when Dawson left the food market, Daly left immediately behind him, and Jones noted that Daly watched him kill Dawson from outside the store. This occurred around 1:24 a.m., and immediately after the murder, at 1.25 a.m., Daly made more phone contact with McClain. Further, Daly purportedly helped Jones to hide after the murder.

---

[2] We note Daly's additional suggestion that there was not sufficient evidence to establish that he ever had a phone conversation with McClain, but, not only in light of our conclusion in section II of this opinion, the argument is entirely without merit. Additional evidence established that Daly made phone calls with a number listed as "McClain" in his phone at 1:14 a.m. for 54 seconds, 1:17 a.m. with no duration, 1:20 a.m. for 29 seconds, and 1:22 a.m. for 31 seconds. A time-stamped surveillance video from inside the market corroborates the same, and also shows Daly's seemingly suspicious behavior, wherein it appears Daly was waiting for someone to arrive at the market. Again, even apart from Jones's testimony, there was additional evidence to suggest that Daly had a phone conversation with McClain.

Taking the above facts in a light most favorable to the prosecution, we conclude that there was sufficient evidence to support a finding that Daly was more than merely present when Jones was killed. The evidence suggested that Daly knew that Jones intended to kill Dawson, and that indeed, Daly aided and encouraged the crime. Accordingly, we conclude that sufficient evidence existed to support Daly's conviction.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Daly next contends that his counsel provided ineffective assistance by failing to raise issues concerning his joint trial with McClain, failing to request an additional jury instruction, and failing to challenge a detective's testimony that he did not think Daly was being truthful during a police interview. We disagree.

We review ineffective assistance of counsel claims as "a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews for clear error the trial court's findings of fact, and reviews de novo questions of law. *Id*. Notably, Daly failed to preserve this issue by moving for a new trial or an evidentiary hearing, *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973), and our review is therefore limited to mistakes apparent from the record, *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

A criminal defendant has a fundamental right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). To prove that defense counsel was not effective, the defendant must show that defense counsel's performance fell below an objective standard of reasonableness. *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Notably, the defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). We give defense counsel wide discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case. *People v Pickens*, 446 Mich 298, 325; 521 NW2d 797 (1994). Additionally, "[a] particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004). That is, this Court will not substitute its judgment for that of defense counsel, or review this issue with the benefit of hindsight. *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). Lastly, in addition to establishing that counsel's performance fell below an objective standard of reasonableness, defendant must also show that there is a reasonable probability that counsel's deficient performance prejudiced the defendant, and that, absent the error, the finder of fact may have had a reasonable doubt about the defendant's guilt. *Strickland*, 466 US at 694; *Pickens*, 446 Mich at 312.

Daly first contends that his counsel provided ineffective assistance by failing to move for separate trials or separate juries. He contends that his counsel should have done so on account of defendants' defenses being mutually exclusive of one another. We disagree.

Generally, joint trials are favored because they promote "the interests of justice, judicial economy, and administration," and defendants do not have the right to separate trials. *People v Etheridge*, 196 Mich App 43, 52-53; 492 NW2d 490 (1992), overruled in part on other grounds by

*People v Reichard*, 501 Mich 81 (2020). If defense counsel makes a motion to sever trials, the trial court must sever offenses that are related only if severance is necessary to avoid prejudicing the defendant's substantial rights. MCR 6.121(B) and (C).[3] One example in which trials should be separated includes where two defendants' mutually exclusive or antagonistic defenses create a serious risk of prejudice against one or both of the defendants. *People v Furline*, 505 Mich 16, 21; 939 NW2d 447 (2020). Severance is not warranted, however, when defenses are merely inconsistent. *People v Hana*, 447 Mich 325, 349; 524 NW2d 682 (1994), amended by 447 Mich 1203 (1994). Rather, the defenses must be irreconcilable to the extent that "a jury would have to believe one defendant at the expense of the other." *Id*. (quotation marks and citation omitted).

In this case, Daly's defense and McClain's defense were not mutually exclusive. Daly argued that he was not part of the conspiracy because he was not part of the planning of the crime and did not know that there would be a murder. In contrast, McClain argued that Jones was a killer, that Jones had not acted on McClain's orders, and that Jones claimed the murder was McClain's idea because Jones needed someone else to take the blame. The jury could have accepted Daly's defense that he did not plan the murder and did not know it would happen regardless of whether it believed that Jones or McClain was the person who wanted to kill Dawson. Moreover, Daly's argument that Jones did not develop the intent to kill Dawson before he was on the way to the food market was not so inconsistent with McClain's argument that he was not involved in the shooting that it prejudiced Daly's substantial rights or warranted a separate trial. Accordingly, we conclude that defense counsel did not provide ineffective assistance by failing to move for separate trials or separate juries because the motion would have been without merit. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012) (explaining that counsel is not ineffective for failing to make a meritless motion).

Next, Daly also argues that defense counsel provided ineffective assistance by unreasonably failing to request an accomplice instruction with respect to Jones's testimony, and specifically with respect to the fact that he received a "deal" in exchange for his cooperation with the prosecution. We disagree, and specifically conclude that counsel's failure to request the instruction was a matter of trial strategy.

Generally, whether to request a particular jury instruction is a matter of trial strategy. *Matuszak*, 263 Mich App at 59-60. The applicable jury instruction in this case is found in M Crim JI 5.4, which provides, among other things, that an instruction should be given when a witness who is an accomplice has admitted guilt. The instruction informs the jury that the witness received a promise wherein he would "not be prosecuted for the crime the defendant is charged with committing based upon any information derived directly or indirectly from the witness's truthful testimony." M Crim JI 5.4.

At trial, proffer agreements were described generally for the jury through the testimony of a detective. That detective testified that Jones had been told a first-degree murder charge had been "taken off the table" in exchange for his testimony, and Jones testified that he was aware of that

---

[3] The trial court should apply the same standards that it would use to sever trials when a defendant also moves for separate juries. *People v Hana*, 447 Mich 325, 351-352; 524 NW2d 682 (1994), amended by 447 Mich 1203 (1994).

agreement. The trial court then instructed the jury to consider, among other factors, whether Jones was promised anything for his testimony, or whether the testimony would allow him to plead guilty to a less-serious charge. Even if we were to accept Daly's argument that the testimony concerning whether Jones had received a deal was confusing, M Crim JI 5.4 itself would have provided no further clarity regarding proffer agreements than the instruction the trial court gave. Accordingly, defense counsel may have reasonably believed that the existing instruction adequately addressed the fact that Jones received a deal in exchange for his cooperation. With that in mind, we cannot conclude that defense counsel's failure to request the instruction was unsound trial strategy, nor that counsel's performance fell below an objective standard of reasonableness.

Lastly, Daly argues that defense counsel provided ineffective assistance by failing to challenge a detective's testimony when that detective opined that he did not believe statements Daly made during a police interview. We agree that the statements were improper, but again, cannot conclude that defense counsel's failure to object was not a matter of trial strategy.

A witness may not comment on or provide an opinion about the credibility of another witness. *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985). Lay witness testimony about the honesty of a witness has no probative value. *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013). A court must be careful when admitting even a police officer's out-of-court statement about a witness's credibility because the jury may give undue weight to such statements. *Id*. at 358. Additionally, a police officer may not indicate a belief that a witness testified truthfully or a witness's story was verified. *People v Bahoda*, 448 Mich 261, 281-282; 531 NW2d 659 (1995).

In this case, a detective testified that he interviewed Daly and that Daly denied involvement in the crime. When the detective asked Daly whether there was "any reason why th[e] investigation wa[s] going to indicate that [Daly was] involved in the homicide of Willie Dawson," Daly responded, "there shouldn't be." The detective suggested that this was "an odd response." The detective then testified as follows:

> *Q*. Okay. But you took note to that particular sentence?
>
> *A*. When—when I'm interviewing someone, if I were to do the interview, maybe of you about a homicide, you would be absolute in your responses. Absolutely had nothing to do with that. You would look me dead in the eye, and you would be very confident in about your answer. Benjamin Daly's response was not confident. There shouldn't be. It was very indicative of deception.
>
> *Q*. Okay. So, you know, we said what he—or, you said what he actually said, the answer he gave. How was his demeanor, how was his posture, was he making eye contact; anything you noted during—
>
> *A*. He did not have a—a good posture, in terms of believability. He became very irate, screaming at the top of his lungs at us, and just vehement denying of any involvement in this, after, as we progressed in the interview. Just—it was a very abnormal response.

* * *

*Q.* Okay. And is it fair to say that you've received some sort of indication, based on what you just said, that Mr. Daly wasn't being completely truthful?

*A.* That's correct.

On cross-examination, the detective testified that Daly was known as "Big Baby," but would not agree with defense counsel's suggestion that Daly was a "big, dumb kid." The following exchange then took place between the detective and Daly's counsel:

*Q.* Well, and is he a very bright adult, do you think?

*A.* I don't have any training to determine level of intellect.

*Q.* Well, you seem to believe that you have training to be a human lie detector. Seems like you'd have to know something about intellect, would you not?

Defense counsel's failure to challenge the detective's testimony appears to be consistent with his attempt to portray Daly as a juvenile, or "a big baby." The detective had testified that he did not believe Daly because Daly "became very irate, screaming at the top of his lungs at us, and just vehement denying of any involvement in this, after, as we progressed in the interview. Just— it was a very abnormal response." The description of Daly's alleged tantrum was consistent with defense counsel's attempted portrayal of him as lacking the comprehension that would have allowed him to be aware of the consequences of his phone call with McClain. It also appears from defense counsel's choice of words in cross-examining the detective that he deliberately did not object to the detective's statement assessing Daly's demeanor and credibility as a strategy to impeach the detective's testimony. With all of that in mind, we again conclude that this was a matter of trial strategy. Moreover, even were we to conclude that Daly's counsel was ineffective for failing to object, we would not be inclined to conclude that the failure to object was prejudicial such that the outcome of the trial may have been different.

## V. PROSECUTORIAL MISCONDUCT

Next, both Daly and McClain argue that the prosecutor committed misconduct when, during closing arguments, she referred to defendants' right not to be shackled or dressed in prison clothing in the presence of the jury. As it concerned McClain, we conclude that this statement did not constitute prosecutorial misconduct because it was made in response to a statement that McClain's counsel had made during closing. Moreover, as it concerned Daly, even to the extent that the prosecutor's comment was inappropriate, the error was harmless because a jury instruction could have cured the prejudice from the prosecutor's isolated statement, and Daly denied such an instruction.

This Court reviews issues of prosecutorial misconduct de novo. *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003). We evaluate instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's comments in context and in light of the defendant's arguments and the evidence presented in the case. *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). A prosecutor engages in misconduct when they deny a defendant their right to a fair trial by making improper remarks that infringe on a defendant's constitutional rights.

*Donnelly v DeChristoforo*, 416 US 637, 643; 94 S Ct 1868; 40 L Ed 2d 431 (1974).[4] See *Bahoda*, 448 Mich at 266-267.

First, with respect to McClain, during closing arguments his counsel stated:

> This wasn't a game for [Jones]. That man is a killer. And you see how he just walked in here, had his nice clothes on? You might as well say he's free already. The prosecution is just throwing get-out-of-jail-free cards.

> Desperation and deception. The man who pulled the trigger on multiple cases is back out. I don't know what his deal is, but we know he's not going to spend the rest of his life in prison. And then they gave the appearance to you that he just walked in here; didn't come in in handcuffs, wasn't shackled; walked right back out there, brushing shoulders with everybody else who's regularly living their life. And this killer is walking around the hallway because he's saying certain things, because he's saying stuff. He's moving their agenda forth. That's not right.

In rebuttal, the prosecution then argued:

> And I want to point to something that I believe both of the attorneys mentioned, some sort of deal; like he walked in here, he had clothes on, you know, he didn't have shackles on, no handcuffs, and he just walked right out the door. That we're just giving him this get-out-of-jail-free card.

> Now, I know all of you are, you know, intelligent adults; and if someone is admitting to a murder and multiple other murders we're not just going to let them walk out of the front doors of the courthouse. No. He was brought here from the jail, we changed his clothes, just like they have a right to be in different clothes and not to be shackled up in front of a jury. He walked out there with five, six other deputies waiting to take him back.

While one might argue in a vacuum that the prosecutor's remark was improper, taken in context and in light of McClain's argument, the prosecutor was responding to an argument raised by McClain. Otherwise improper remarks that respond to improper arguments by defense counsel generally do not constitute prosecutorial misconduct. *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996). Additionally, a brief, isolated, and uninflammatory comment is not highly prejudicial. *People v Blackmon*, 280 Mich App 253, 260-261, 269; 761 NW2d 172 (2008). Thus, we cannot conclude under the circumstances that the prosecution's comments constituted prosecutorial misconduct as applied to McClain as a defendant. Moreover, and with the above in

---

[4] Notably, "[f]reedom from shackling is an important component of a fair trial." *People v Dixon*, 217 Mich App 400, 404; 552 NW2d 663 (1996). A defendant has the right to appear at trial without restraints or prison attire because such clothing may undermine his or her presumption of innocence. *People v Banks*, 249 Mich App 247, 256; 642 NW2d 351 (2002).

mind, the prosecutor's statement was so brief and isolated that we are not inclined to conclude that it infringed on McClain's rights so substantially that he was denied due process.

With respect to Daly, he argues that the prosecutor's remarks were improper as to him because the argument made by the prosecutor was not in response to anything raised by Daly's counsel. While it is true that the prosecutor's remark was not in response to an argument made by Daly, we still cannot conclude there was any error requiring reversal because Daly declined a curative instruction.

An error does not require reversal if a curative instruction could have alleviated the effect of the prosecution's misconduct because curative instructions are "sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements," and because this Court presumes that jurors follow the trial court's instructions. *Unger*, 278 Mich App at 235. In this case, the trial court offered to issue a cautionary instruction with respect to the prosecution's comment, and Daly's counsel declined the offer on the basis that nothing could "be done or told to the jury that can fix anything." Again, however, this Court has ruled that curative instruction are generally sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements. *Id.* Moreover, we do not permit counsel to "harbor error as an appellate parachute." *People v Carter*, 462 Mich 206, 214; 612 NW2d 144. With counsel having being fully aware of the of the erroneous nature of the prosecution's comment as it applied to Daly, and having then declined a curative instruction, we cannot conclude that Daly is entitled to relief on this ground.

## VI. CODEFENDANT CREDIBILITY

McClain next argues that the detective's testimony outlined in section IV of this opinion— that he believed that Daly responded oddly during a police interview—denied McClain a fair trial by invading the province of the jury to decide whether Daly was a credible witness. Although, as noted above, the detective's opinion testimony was improper, this error did not prejudice McClain.

An evidentiary issue is preserved when a defendant makes a timely and specific objection on the same grounds he later asserts on appeal. *People v Considine*, 196 Mich App 160, 162; 492 NW2d 465 (1992). McClain did not challenge this issue before the trial court, and it is therefore unpreserved. This Court reviews unpreserved issues for plain error affecting a party's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, or if it is contrary to well-settled law. *Id.*; *Vaughn*, 491 Mich at 665. An error affects substantial rights if it affected the outcome of the lower court proceedings. *Carines*, 460 Mich at 763.

That a police officer may not opine about a witness's credibility is well-settled law. *Buckey*, 424 Mich at 17; *Musser*, 494 Mich at 348. Accordingly, as noted, the detective's statement was plainly erroneous. That having been said, we cannot conclude that the error was prejudicial toward McClain. The primary witness against McClain was Jones, and defense counsel defended McClain by arguing that Jones was not a reliable witness. Even to the extent that the detective's comments as to Daly may have impacted the juries view of McClain, we would not conclude that the testimony was outcome-determinative. That is, in light of all of the evidence in this case, the detective's testimony about whether *Daly* was credible did not affect the outcome as it pertained to *McClain*.

## VII. SENTENCING

McClain lastly contends that the trial court erred by failing to assess the minimum sentencing guidelines range related to his less-serious offenses prior to McClain's sentencing. McClain also contends that the trial court was required to sentence him to life imprisonment *with* the possibility of parole for his conviction of conspiracy to commit first-degree murder. We conclude that both arguments are without merit.

With respect to McClain's first argument, a defendant waives an issue by expressly approving of the trial court's action. *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000). A waiver extinguishes any error, leaving nothing for this Court to review. *Id.* at 215. An affirmative statement that a person has no objections is an express approval of the trial court's action. *People v Kowalski*, 489 Mich 488, 504-505; 803 NW2d 200 (2011). In this case, McClain and defense counsel both indicated that they had reviewed the presentence investigation report (PSIR) prior to sentencing and had no additions or corrections. By affirmatively approving of the PSIR, McClain waived his argument that the PSIR should have included assessments related to the minimum sentencing guidelines range of his lesser offenses. Thus, even if the trial court erred by failing to consider the minimum sentencing guidelines ranges of McClain's lesser offenses, we would not review this error.

With respect to McClain's second argument, he notes that, unlike a conviction of premeditated first-degree murder, a conviction of conspiracy to commit first-degree murder is a parolable offense. Indeed, our Supreme Court has held that "a person sentenced to life imprisonment for conspiracy to commit first-degree murder is eligible for parole consideration . . . ." *People v Jahner*, 433 Mich 490, 504; 446 NW2d 151 (1989). At that time, however, the first-degree murder statute provided that "[m]urder which is perpetrated by means of poison, lying in wait, or other wilful, deliberate, and premeditated killing . . . shall be punished by imprisonment for life." MCL 750.316, as amended by 1980 PA 28. The first-degree murder statute has since been amended, and currently provides that "a person who commits any of the following is guilty of first degree murder and *shall be punished by imprisonment for life without eligibility for parole*," listing "[m]urder perpetrated by means of poison, lying in wait, or any other wilful, deliberate, and premeditated killing." MCL 750.316(1)(a) (emphasis added). MCL 750.157a(a) then provides that individuals guilty of conspiracy to commit an offense prohibited by law that is otherwise "punishable by imprisonment for 1 year or more," shall be convicted and "punished by a penalty equal to that which could be imposed if he had been convicted of committing the crime he conspired to commit . . . ." With the above in mind, McClain's sentence of life imprisonment without the possibility of parole for his conviction of conspiracy to commit first-degree murder under MCL 750.157a(a) is consistent with the first-degree murder statute, MCL 750.316(1)(a), which provides a term of life imprisonment without the possibility of parole.

Affirmed.

/s/ Mark T. Boonstra
/s/ Jane E. Markey
/s/ Karen M. Fort Hood